ELIZA T. FAY v. ABEL DELOS WOOD AND SETH LEE.

*Quitclaim deed—After-acquired title—Land patent—Taxes—Assessment roll—Municipal corporations—Authority of council to direct taxation—Construction of charter.*

1. " A quitclaim deed can never inure to convey any *subsequently* acquired title which was not actually owned in equity at the time of the deed." *Frost v. Missionary Society,* 56 Mich. 69,
   So *held,* in a case where a plaintiff in ejectment sought to trace his title through a patent issued to *three* patentees as *assignees* of

the original certificate of purchase, and a quitclaim deed from *one* of the patentees, executed *after* the issuance of the certificate and *prior* to the date of the patent, the date of the assignment of the certificate not being shown; it being held that such deed was immaterial, in the absence of proof that it was executed *after* such assignment.

2. A supervisor certified that he had estimated the real estate listed on his roll at what he believed to be its "true value."

   *Held*, that the certificate was defective in omitting the word "cash" between the words "true" and "value." *Dickison v. Reynolds*, 48 Mich. 159.

3. A city charter required the common council to determine by resolution the amount necessary to be raised by tax for city purposes, to be denominated the "*contingent fund*," and also the amount necessary to be raised for the payment of the city debt, and interest thereon, to be denominated the "*interest fund*." The council adopted a resolution directing that a *gross* sum be raised by taxation "as a contingent fund to defray the current expenses of the city, as well as to pay the interest of her water bonds for one year."

   *Held*, that the resolution containing the statutory designation lies at the foundation of the authority for the common council to impose the tax, which provision is for the protection of the individual against excessive levies, as well as to enable creditors and citizens to see that the payment of the public debt and the interest thereon is provided for; and that the failure of the council to observe the requirement of the charter rendered a tax deed issued on a sale of land for such taxes void. *Hoyt v. East Saginaw*, 19 Mich. 44.

4. A city charter required the common council to apportion the amount voted to be raised for city taxes among the several wards, according to their respective valuation as equalized by the board of supervisors of the county, and the recorder was required to notify each supervisor of the amount apportioned to his ward, who was required to levy the same. The council, by resolution, instructed the several supervisors, with the assistance of the recorder, to make such apportionment.

   *Held*, that the action of the council in making such apportionment was a step required by the statute for the regular and orderly progress of the work of assessing the tax, and was purely *ministerial;* that the *data* for such apportionment being *absolutely* fixed by the board of supervisors when they equalized the rolls, the *act* of apportionment required of the council is simply a mathematical calculation, which may as well be done by a clerk or other party designated as by the council, and, if so done, can

be no more objectionable than the extension of the tax by a clerk of the supervisor.

*Held,* further, that the apportionment by the council, and certification by the recorder, is merely a method by which the amount to be levied is brought to the knowledge of the supervisor, and were not intended for the protection of the citizen, or to prevent a sacrifice of his property. If the *correct* amount is assessed, no one will be injuriously affected, and, in order to invalidate the tax for non-compliance with a *directory* requirement, it must be shown that injury has resulted to the person assessed in consequence thereof.

5. A city charter made it the duty of the common council to *determine* the *amount* necessary to be raised in each ward for highway purposes, and the council, by resolution, directed that the highway tax to be raised on the total assessment of the real and personal property in a specified ward should be one-fourth of one per cent.

   *Held,* that the council was required to determine the *amount* necessary to be raised, and not that it was *necessary* to raise a certain sum, for highway purposes; and that the action of the council sufficiently determined such amount by designating it as a fixed percentage on the taxable property in the ward.

6. Where a city charter required the council to determine the amount necessary to be raised for city purposes, to be denominated the "*contingent fund,*" and the amount necessary to be raised for the payment of the city debt and the interest thereon, to be denominated the "*interest fund,*" and the council resolved that a certain sum be raised for the purpose of defraying the expenses of the city for one year,—

   *Held,* that the whole sum raised must be held, on the face of the record, to be for the "*contingent fund,*" and that the failure to raise any money for the "*interest fund*" would not invalidate the tax raised.

   *Held,* further, that should it be made to appear that a *part* of the sum named was in *fact* raised for the payment of the city debt and interest thereon, the levy would be illegal for reasons stated in head-note 3.

7. Statutes fixing a *time* for the doing of an act are *directory,* where the time is not fixed for the purpose of giving a party a *hearing,* or for some other purpose *important* to him.

   So *held,* where a city charter required the common council to determine the amount necessary to be raised for highway tax on or before the first day of June in each year, the matter being left in the discretion of the council, and no hearing being contemplated with reference to the amount to be raised; and that

the council did not lose jurisdiction by not acting within the prescribed time.

8. A city charter made it the duty of the common council to determine by resolution the amount necessary to be raised by tax for city purposes other than highway purposes, which were otherwise provided for.

*Held*, that a resolution "that the amount to be levied by taxation for the present year be $80,000" was a sufficient compliance with the charter as to the determination of the amount to be raised.

9. Where an assessment roll was objected to for want of a statutory certificate, and it was claimed that the appearance of the roll showed that there had been one or more leaves detached,—

*Held*, that a question of fact was presented as to whether the roll was in the plight it was when returned to the county treasurer, and whether when delivered to the supervisor it was properly certified.

Error to Muskegon. (Russell, J.) Argued February 4 and 8, 1887. Decided April 14, 1887.

Ejectment. Defendants bring error. Reversed. The facts are stated in the opinion and head-notes.

*Smith, Nims, Hoyt & Erwin,* for appellants.

*Henry H. Holt* and *Keating & Dickerman,* for plaintiff.

CHAMPLIN, J. Ejectment to recover possession of lots 5 and 6 of Mills and Furlong's addition to the city of Muskegon, which plaintiff claims in fee.

To prove title, plaintiff offered in evidence a patent from the State of Michigan to Samuel R. Sanford, Thomas Mills, and James Mills. The patent contained a recital that Charles Carmichael had purchased and paid in full for the land, and received a certificate therefor, which certificate had been duly assigned to Samuel R. Sanford, Thomas Mills, and James Mills. The date of the patent is December 19, 1861. The certificate was dated May 9, 1855, and no date is mentioned when the assignment was made, and it does not appear in the record before us when it was made.

Plaintiff then offered in evidence a quitclaim deed of the premises from Samuel R. Sanford to Thomas and James Mills, dated and acknowledged the twenty-fourth day of November, 1857; to the admission of which the defendants objected, upon the ground that no title had been shown in Samuel R. Sanford at the time of the execution of the deed. The counsel for plaintiff stated that he did not propose to offer any other evidence of title in Sanford than the patent already introduced. The objection was overruled, and the deed was read in evidence.

It is claimed that the objection is fully met and disposed of by the case of *Clark v. Hall*, 19 Mich. 356. In that case the land was entered May 5, 1835, by Erastus H. Spaulding. July 7, 1835, Spaulding assigned his certificate to Shubael Conant. September 3, 1835, Conant executed a quitclaim deed of the land to Sylvanus Russell, and on April 1, 1837, the United States issued a patent, based upon the certificate and assignment, to Conant; and this the Court held related back to the original entry, and perfected and made valid any attempted transfer *by the patentee* intermediate the entry and the patent.

It appears from the facts stated in that case that Conant, at the time he executed the quitclaim deed to Russell, held the equitable title by assignment from Spaulding. He held something, therefore, that he could convey.

In *Frost v. Missionary Society*, 56 Mich. 69, it was held by the majority of this Court that "a quitclaim deed can never inure to convey any subsequently acquired title which was not actually owned in equity at the time of the deed." In making his chain of title, therefore, it was necessary for plaintiff to show that Sanford had some interest in the land, legal or equitable, at the date of his quitclaim deed to Thomas and James Mills, for the after-acquired title to operate upon by relation. If the quitclaim deed was anterior to the assignment, it conveyed no interest derived through

the certificate to Carmichael, and created no estoppel against acquiring an interest from him. The burden of proof was upon the plaintiff to show that Sanford had some interest, and what that interest was, which was conveyed by the quitclaim deed.

In ejectment plaintiff can recover only upon the strength of his own title. The objection was well taken to the introduction of the quitclaim deed. It was not material until first made so by proving that it was executed subsequently to the assignment from Carmichael to Sanford, James and Thomas Mills. This will necessitate a new trial of the case; but, as the defense based upon the tax titles will necessarily arise upon another trial, we will notice the objections made to the validity of those titles.

The tax deeds introduced in evidence were eight in number, and were executed by the Auditor General on sales of land for delinquent taxes for the years 1870 to 1877, inclusive. These titles were all held invalid by the circuit judge. The defendants take no exceptions to his ruling upon the deeds for the taxes of 1873 and 1875. For the other years they insist that the deeds are valid. The objections raised to the validity of the deed of 1877 are the following:

The supervisor's certificate attached to the assessment roll for that year is defective in omitting the word "cash" between the words "true" and "value," where those words first appear in the certificate. The certificate is set out in the record, and is identical with that passed upon by this Court in *Dickison v. Reynolds,* 48 Mich. 159, and the objection is disposed of by that decision.

The other objections are directed against the action of the common council of the city of Muskegon relative to the city and highway taxes of that year. The record of the proceeding of the common council was introduced in evidence, from which it appears that it was moved and supported " that the sum of $28,000 be raised by taxation on the taxable property

of the city as a contingent fund to defray the current expenses of the city, as well as to pay the interest of [on] her water bonds for one year," which was carried. It was then moved and supported that the several supervisors of the city be instructed to spread upon their tax rolls for the year 1877 the sum of $28,000 for city taxes, each in proportion to the gross valuation, on the taxable property of his respective ward, as equalized by the board of supervisors of Muskegon county at a session in 1877, which was also carried.

Section 57 of the charter of the city of Muskegon, as revised and amended in 1875 (Local Acts 1875, p. 269), provides:

"Sec. 57. It shall be the duty of the common council, on or before the last Saturday of October in each year, to determine by resolution the amount necessary to be raised by tax for city purposes within said city for such year, to be denominated the 'contingent fund,' and also the amount necessary to be raised for the payment of the public debt of the city, and the interest thereon, to be denominated the 'interest fund,' and to apportion said amounts so to be raised among the several wards of said city, according to the valuation of the property appearing upon the assessment rolls of said several wards for such year, as equalized by the board of supervisors of Muskegon county for such year; and within five days the recorder shall notify each of the supervisors of the several wards of said city of the amounts so apportioned to their respective wards; and it is hereby made the duty of the supervisor of each of the several wards of said city to levy the amount so apportioned to his respective ward, and such other taxes as may be required by law, upon the taxable property of such ward, in the same manner as taxes for township purposes are required by law to be levied by the supervisors of the townships of this State."

And section 59 enacts as follows:

"Sec. 59. The common council shall have authority to levy, assess, and collect taxes upon all the real and personal estate taxable in said city, in such amount each year as may be necessary to defray the ordinary expenses of the city government, to pay the public debt of said city, and the interest thereon, and including the support of the public schools of

said city, the maintenance of the city poor, the support of the police and fire department, expenses of the board of health, the care and maintenance of water-works, subject to restrictions contained in this act: *Provided*, That the amount of such tax shall not exceed seven per cent. on the valuation of such real and personal property within said city, according to the valuation thereof, taken from the assessment rolls of the preceding year."

It is claimed that the action of the common council above stated was defective and illegal for three reasons, namely:

1. The resolution did not determine the amount necessary to be ra'sed by tax for either one of the two purposes designated in section 57.

2. Because the section requires that they shall designate in certain funds the amount to be raised as a contingent fund, and the amount to pay the debt of the city, and this resolution does neither.

3. This section requires the common council itself to apportion these two amounts, raised for these specific purposes, to the different wards, according to the valuation of the property appearing upon the assessment rolls for such several wards, as equalized by the board of supervisors for Muskegon county for such year, and the record shows that no apportionment was made by the common council.

Section 57 of the charter was amended in 1875. As it stood prior to this amendment, it provided that the common council should, on or before the last Saturday in October in each year, determine by resolution the amount necessary to be raised by tax for city purposes within the city for such year, other than highway purposes. The balance of the section is the same in both enactments. The amendment is significant, and its requirements mandatory.

The resolution embracing the designation required by the statute lies at the foundation of the authority for the common council to impose the tax, and the change in the law was manifestly for the purpose of protecting the individual against excessive levies, as well as to enable creditors and citizens to see that the payment of the public debt and the interest thereon was provided for. The failure to observe

this requirement of the statute rendered the tax deed offered in evidence for the year 1877 void. Cooley, Tax. (2d ed.) 280 *et seq.; Hoyt v. East Saginaw,* 19 Mich. 44.

The third objection raises the question whether that portion of the section requiring the common council to apportion the amount to be raised by taxation among the several wards is mandatory or directory. The action of the common council in apportioning the amount among the supervisors of the various wards is a step in the proceedings required by the statute for the regular and orderly progress of the work of assessing the tax. It is purely ministerial, and involves no judicial functions. The *data* for the apportionment is absolutely fixed by the board of supervisors when they equalize the rolls. The act of apportionment required of the council is simply a mathematical calculation, which may as well be done by a clerk or other party designated as by the council, and can be no more objectionable if done by a clerk than would the extension of the tax upon the assessment roll by a clerk of the supervisor.[1] *Robbins v. Barron,* 33 Mich. 124; *State v. Maginnis,* 26 La. Ann. 558; *Philadelphia & R. R. R. Co. v. Com.,* 104 Penn. St. 86.

The apportionment by the council, and certification by the recorder, is merely a method by which the amount to be levied is brought to the knowledge of the supervisor. The requisitions prescribed were not intended for the protection of the citizen, or to prevent a sacrifice of his property. If the correct amount is assessed, no one will be injuriously affected, and, in order to invalidate the tax for non-compliance with a requirement that is directory, it must be shown that injury has resulted to the person assessed in consequence thereof.

In *Case v. Dean,* 16 Mich. 32, it was said that—

"The authority to tax is fixed by statute, and must be strictly pursued. The supervisor has no authority to tax at

[1] See *Peninsula Iron Co. v. Crystal Falls,* 60 Mich. 510.

his own discretion, but can only assess such taxes as are properly certified to him for that purpose, and such as the law makes it his own immediate duty to assess without such certificate."

In this case the point is not made that the supervisor had no authority to assess for want of a proper certificate, and it does not appear whether such certificate was given or not. The supervisor was directed to assess the amount in proportion which the equalized value of the taxable property in his ward bore to the taxable property in the city, as equalized by the board. The means of knowledge of the equalized valuation possessed by the supervisor was equal to, if not greater than, that of the council. He was one of the members of the board which equalized the rolls, and his own roll contained the certificate of the value of the taxable property as equalized. No reason is perceived why this requirement of the law should be held to be mandatory, while there are good reasons to hold it to be directory merely. *Stockle v. Silsbee*, 41 Mich. 615, 618.

Another objection to the validity of this deed is directed to the highway tax. Plaintiff offered and read in evidence from the records of the proceedings of the common council had on the eighteenth of May, 1877, to the effect that it was moved and supported that the highway tax to be raised on the total assessment of the real and personal property in the second ward, for the year 1877, be one-fourth of one per cent., which was carried.

The section of the charter under which this action was taken provides:

"Sec. 64. The common council shall, on or before the first day of June in each year, determine the amount necessary to be raised in each ward of said city for such year for highway purposes, not exceeding one-quarter of 1 per cent. on the assessed valuation of such wards, and shall provide for the levying, assessing, collecting, and expending the same, in the same manner as provided by the general laws relating to townships of this State." Local Acts 1875, p. 272.

It is claimed by the plaintiff that the action of the council fails to show any resolution that it *was necessary* to raise the amount named, or any amount, and that it fixes an amount for the entire city, and not for the several wards of the city, as provided by the section; that the council must determine it is necessary, whatever amount they raise. The statute is not open to the construction contended for. The council is to determine the amount necessary to be raised, not that it is necessary to raise a certain amount, for highway purposes. The action of the council sufficiently determined the amount necessary to be raised by designating it as one-fourth of 1 per cent. on the taxable property in the second ward for the year 1877.

In the year 1876 the common council resolved that the sum of $33,000 be raised from the taxable property of the city for the purpose of defraying the expenses of the city one year. The objection made by the plaintiff to this resolution is that it fails to show how much was necessary, or that they voted anything for the contingent fund or for the public debt. We think the whole sum named was for the contingent fund. The statute above cited states that the amount raised by tax for city purposes shall be denominated the "contingent fund." But the resolution does not mention any amount necessary to be raised for the public debt or interest thereon. The face of the resolution would show that the amount of $33,000 was all raised for the contingent fund. If this was so, it would not invalidate the tax because the council failed or neglected to raise any money for the other fund. If, however, it should be made to appear that a part of the amount of $33,000 was in fact raised for the payment of the public debt and the interest thereon, the levy would be illegal for reasons stated with reference to the taxes of 1877.

The council directed the recorder to apportion the $33,000 on the basis of the several assessment rolls of the city, as

equalized by the board of supervisors of Muskegon county for the present year, and notify each supervisor of the apportionment of his ward. There is nothing in this action which renders the taxes void. The objection to the highway tax is disposed of by what we have said with reference to the highway tax of 1877, with the exception of a further objection taken, based upon the fact that the resolution for raising a highway tax was not passed by the council until June 9, 1876. The statute prescribed that such determination shall be had on or before the first day of June in each year. Statutes fixing a time for the doing of an act are considered as only directory, where the time is not fixed for the purpose of giving a party a hearing, or for some other purpose important to him. The law contemplates no hearing with reference to the amount to be raised for highway purposes. The whole matter is left in the discretion of the common council, and they did not lose jurisdiction by not acting within the prescribed time.

The tax of 1874 was assessed and levied under the charter as amended in 1871, which provided as follows:

"Sec. 66. The common council of said city shall, on or before the first day of June in each year, determine the amount necessary to be raised in each ward of said city for such year for highway purposes, not exceeding the amount specified in this act, and shall provide for the levying, assessing, collecting, and expending the same, in the same manner as provided by the general laws relating to townships of this State; and the said common council are hereby vested with the same power and authority as are commissioners of highways of this State by the laws thereof, not inconsistent with the provisions of this act."

"Sec. 46. It shall be the duty of the common council of said city, on or before the last Saturday of October in each year, to determine by resolution the amount necessary to be raised by tax for city purposes within said city for such year, other than highway purposes, and to apportion the same so to be raised among the several wards of said city, according to the valuation of the property appearing upon the assessment rolls of said several wards for such year, as equalized

by the board of supervisors of Muskegon county for such year; and within five days thereafter the recorder shall notify each of the aldermen, acting as the supervisors of the several wards of said city, of the amount so apportioned to their respective wards; and it is hereby made the duty of the aldermen, acting as the supervisor of each of the several wards of said city, to levy the same so apportioned to his respective ward, and such other taxes as may be required by law, upon the taxable property of such ward, in the same manner as taxes for township purposes are required by law to be levied by the supervisors of the townships of this State."

On the twenty-fourth of October, 1874, the common council, on motion, resolved that the amount to be levied by taxation for the present year be $30,000. This resolution was a sufficient compliance with the section of the charter above cited, as to the determination of the amount to be raised. The objection as to the manner of apportionment is covered by what we have already said upon this subject.

The objections to the taxes of 1872 and 1871 are covered by what has already been said, and need not be repeated.

A further objection was taken to the assessment roll of 1870; that there was no certificate attached to the roll by the recorder of the city, showing it had been corrected and revised as required by section 53 of the charter. Defendants' counsel claimed that its appearance showed that there had been one or more leaves detached. A question of fact was presented as to whether the roll was in the plight it was when returned to the county treasurer, and whether at the time it was delivered to the supervisor it was properly certified. But the court instructed the jury that the tax deed was void for the reason that the action of the council with reference to the highway tax was taken on the fifth of July, when it should have been in May. For reasons already stated we think the court was in error.

The judgment must be reversed, and a new trial granted.

CAMPBELL, C. J., and SHERWOOD, J., concurred. MORSE, J., did not sit.