[L. A. No. 2980.    Department Two.—February 18, 1913.]

## MARY E. CAKE, Appellant, v. CITY OF LOS ANGELES, Respondent.

STATUTES—CONSTRUCTION OF WORD "SHALL"—WHEN GIVEN MANDATORY EFFECT.—It is a general rule of construction that the word "shall" when found in a statute is not to be construed to be mandatory, unless the intent of the legislature that it shall be so construed is unequivocally evidenced. This evidence, found in the statute itself, may consist of a declaration that the word is of mandatory import, or of negative words forbidding the doing of the act after the time fixed, or of words withdrawing the power to do the act after the time fixed, or by a showing that a right dependent upon the doing of the act within the time fixed is lost or impaired by the non-performance of that act.

STREET OPENING ACT—TIME LIMITED FOR PREPARING ASSESSMENT— PROVISION MERELY DIRECTORY.—The provisions of sections 16 and 19 of the Street Opening Act of 1903, as amended in 1909 (Stats. 1909, p. 1040), fixing a time limit for the preparation of either the original assessment or a new assessment for the expenses of the proposed improvement, are merely directory.

ID.—NEW ASSESSMENT—FAILURE TO PREPARE WITHIN SIXTY DAYS FROM ORDER OF CITY COUNCIL.—The failure to prepare the new assessment within sixty days from the date of the order of the city council directing it, there having been no extension of time given for that purpose, does not render the assessment void.

ID.—NEW ASSESSMENT MADE ACCORDING TO INSTRUCTIONS OF CITY COUNCIL—INSTRUCTIONS GIVEN AFTER SUSTAINING PROTEST TO ORIGINAL ASSESSMENT.—The fact that the new assessment was not made in accordance with the free and uninfluenced judgment of the street superintendent, in this case the board of public works of the municipality, but was made solely in accordance with a memorandum of instructions furnished by the city council, does not invalidate the assessment. The fact that such instructions were given by the council after it had sustained the protests to the original assessment and after it had ordered the new, is immaterial.

ID.—EQUITABLENESS OF ASSESSMENT—DETERMINATION OF COUNCIL— ABSENCE OF FRAUD.—Under that act, a person assessed has the right to be heard by the city council upon the matter of the equitableness of the assessment, and in the absence of fraud in connection with the assessment, the determination of the council is final.

ID.—PENALTY FOR DELINQUENCY COMPUTED ON ENTIRE ASSESSMENT— DAMAGES AWARDED NOT TO BE DEDUCTED.—Under sections 21, 22

CLXIV. Cal.—45

and 24 of that act, a property owner who had been awarded damages for lands condemned for the proposed improvement, and whose remaining lands were assessed therefor, and who allows the assessment to become delinquent, is liable for a five per cent penalty computed upon the entire amount of the assessment, without deduction for the amount awarded as damages.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Hester, Merrill & Craig, for Appellant.

John W. Shenk, City Attorney, and E. R. Young, Assistant City Attorney, for Respondent.

HENSHAW, J.—After general demurrer sustained to her complaint, judgment was entered for defendant and plaintiff appeals upon the judgment-roll. By her complaint she seeks to recover from the city of Los Angeles moneys paid by her under a street assessment, which moneys she alleges were paid by compulsion and under protest. The complaint charges in two counts. In the first, allegations are set forth upon which it is contended the assessment was void. By the second, the illegality of the assessment is not asserted, but it is alleged that plaintiff was compelled to pay a sum greater than that for which she was legally liable.

The facts disclosed by the complaint are the following: The city of Los Angeles, defendant herein, under the Street Opening Act of 1903 [Stats. 1903, p. 376], undertook to widen one of its streets named Hill Street. A portion of one of plaintiff's lots lay within the proposed street as widened, and under condemnation proceedings plaintiff was awarded $8,475.81 for this land. The street work was done and an assessment upon the land within the district was made and returned by the board of public works. Objections were filed to the assessment and on May 24, 1910, the committee on streets and boulevards of the city council of the city of Los Angeles recommended that the assessment "be referred back to the board of public works for modification." This recommendation was adopted by the council. The objections to the

assessment were then sustained and the assessment referred to the board of public works. On August 23, 1910, the council by resolution instructed the board of public works to make the new or modified assessment in accordance with a memorandum prepared by its committee on streets and boulevards. In pursuance of such resolution the board of public works, on August 25, 1910, filed with the city clerk of the defendant a new assessment. This new assessment was made in strict conformity with instructions of the city council, and, it is alleged, not in accordance with the free and uninfluenced judgment of the board of public works. Plaintiff was assessed upon three parcels of land, the assessment upon the first being $8,810.40, the second $4,360.35 and the third $4 38.35. It is alleged that the first two items of assessment were disproportionate to and in excess of the benefits that would be derived from the improvement, and were likewise disproportionate to and in excess of the assessments upon other properties within the assessment district which were of greater value and would receive larger benefits from the improvement. Upon the filing of the new assessment, notice thereof and of the time for filing objections thereto was given in accordance with the requirement of section 18 of the Street Opening Act. Pursuant to notice, objections to the assessments were filed by certain owners of the land, of whom plaintiff was one. The objections were overruled and the new assessment was confirmed. Afterward and in accordance with the provisions of the Street Opening Act, the board of public works fixed the sixteenth day of December, 1910, as the time when all unpaid assessments should be and become delinquent and fixed the thirteenth day of January, 1911, as the time when lands subject to the lien of the delinquent assessment should be sold. Under the conviction that the assessment was void, plaintiff did not pay the amounts assessed against her lands before the date of delinquency. On January 5, 1911, she commenced proceedings in the superior court to have the proposed sale of her lots enjoined, upon the ground that the assessment was void, and on the ninth day of January moved the court for an order restraining the sale until her action could be heard upon its merits. This motion was on the ninth day of January denied by the court, and the board of public works declared that it would sell plaintiff's property upon the date fixed for sale

unless plaintiff would execute to the board a receipt for the sum of $8,475.81 awarded to her as the value of her property taken for the purposes of the improvement, and additionally should pay the sum of $5,824.64. This latter sum was made up of three separate items. First, the sum of $5,142.24, the difference between the total assessment of $13,618.10 and the $8,475.81 award in the condemnation proceedings; second, $1.50, the cost of advertising the sale, and, third, $680.90, the amount of the five per cent penalty provided by law estimated upon the total sum of $13,618.10. To protect her property from this forced sale, after protest and under compulsion, plaintiff gave the receipt and paid the full amount demanded. Thereafter and before the commencement of the action plaintiff filed her claim against the defendant in the manner provided therefor by the charter of the defendant, and upon the refusal to allow or pay her claim commenced this action.

1. Under her first count, charging upon the invalidity of the assessment, appellant contends that the new or second assessment was not returned within the time limited by the law. The proceedings upon an original assessment are prescribed by section 16 of the act as amended in 1909. (Stats. 1909, p. 1040.) There it is declared that:

"The street superintendent, upon receiving the said diagram, shall proceed to assess the total expenses of the proposed improvement upon and against the lands . . . within said assessment district . . . in proportion to the benefits to be derived from said improvement. The street superintendent shall complete said assessment within sixty days after the receipt by him of said diagram; provided, however, that the city council may by order extend the time for the completion of said assessment for a period not exceeding ninety days additional."

Section 19 of the same act further provides:

"And said council shall hear all such objections at said meeting or at any other time to which the hearing thereof may be adjourned, and pass upon such assessment, and may confirm, modify or correct said assessment, or may order a new assessment, upon which like proceedings shall be had as in the case of an original assessment; or if there be no objections the council shall, at any regular meeting after the expiration of the time for filing objections, confirm such assessment and

the action of the council upon such objections and the assessment shall be final and conclusive in the premises."

It is conceded that the action of the city council upon the protests raised against the original assessment amounted to an order upon the board of public works to prepare a new assessment. Appellant points out that the original assessment is to be completed within sixty days after the receipt by the street superintendent (here, board of public works) of the diagram, or within such extended period not exceeding ninety days additional time, as the council may award. Further, appellant points out that when a new assessment is ordered it is declared that upon this "like proceedings shall be had as in the case of an original assessment." Appellant construes this language to limit the time within which the new assessment must be prepared, and as the new assessment was not prepared within sixty days from the date of the order of the council upon the board of public works so to prepare it, and as no extension of time was given by the board of public works for this purpose, the conclusion, appellant argues, is irresistible that the assessment is void. The conclusion, however, does not necessarily follow. It is at least a reasonable construction of the declaration that "like proceedings shall be had as in the case of an original assessment," to say that it has reference to the new assessment when completed, and that "like proceedings" therefore mean the proceedings that are or may be taken after the return of the new assessment to the council, the appeal, notice of the hearing of the appeal, the determination thereof and the like. But aside from this, and in full recognition of the fact that the proceedings for the improvement of streets are proceedings *in invitum,* we are of the opinion that even if it be held that the time limit is applicable to the new assessment, still the language fixing this time limit is directory and not mandatory. It is a general rule of construction that the word "shall" when found in a statute is not to be construed to be mandatory, unless the intent of the legislature that it shall be so construed is unequivocally evidenced. This evidence, found in the statute itself, may be of different kinds. It may be found in a declaration that the word is of mandatory import, as we find in our own constitution, that its declarations are all mandatory and prohibitory unless the contrary is expressly declared. (Const.,

art. I, sec. 22.) It may be evidenced by negative words forbidding the doing of the act after the time fixed. Or it may be evidenced by words withdrawing the power to do the act after the time fixed. Or, finally, it may be evidenced by a showing that a right dependent upon the doing of the act within the time fixed is lost or impaired by the nonperformance of that act. (*Wheeler* v. *Chicago,* 24 Ill. 105, [76 Am. Dec. 736] ; *Pond* v. *Negus,* 3 Mass. 232, [3 Am. Dec. 131] ; *In the Matter of Broadway Widening,* 63 Barb. (N. Y.) 579; *Fay* v. *Wood,* 65 Mich. 390, [32 N. W. 614].) A reading of the statute here under consideration discloses that there are no negative words denying the power to return the new assessment after the indicated time; that no undue advantage is gained to the city or to the contractor, and no benefit either to the public or to any individual thereof is impaired or lost by the return of the assessment after the indicated time, and, under these circumstances, in accordance with the rules of construction above announced, it is held that the provision is directory.

Plaintiff's next objection to the validity of the assessment rests upon the allegation of her complaint that it was not made in accordance with the free and uninfluenced judgment of the board of works, but was made solely under the memorandum of instructions furnished to the board by the city council. If this were true, it would be no ground for overthrowing the assessment. The city council sits as a *quasi* court of appeal to pass upon the complaints and objections which the interested parties, contractors, or property owners, may make to the assessment. Having found that certain objections are well taken, and, on account of them, having ordered the board of works to prepare a new assessment, it is not only unobjectionable but quite commendable for the council, in so ordering the new assessment, to direct the form which it shall take. It is precisely what a court of appeals is called upon to do in many of the matters which come before it. Thus a court of appeals is enjoined by the laws of this state, in the event that an appeal is deemed well taken and a new trial ordered, to discuss all objections presented upon the appeal and that may arise in the course of a new trial, to the end that the inferior tribunal may avoid the repetition of error. It does not appear that the city council did more than this in the

present instance, and the property owner still had his right of objection and protest to the new assessment when returned to the council.

Appellant's third objection is to the effect that even if the council had authority to instruct the board upon the manner of making the assessment, it lost jurisdiction in the matter upon May 24th; that is to say, that its authority was lost when it made its order sustaining the objections and ordering the new assessment. We see no force to this objection. The council had heard the objections of the property owners, weighed them and passed upon them. Nothing in the statute forbids, and no right of a property owner is impaired by the giving of information or instruction upon the subject of the new assessment to the board of public works at any time after the date of sustaining the protest to the original assessment.

Plaintiff's allegation that the assessments upon her two lots were inequitable was a matter upon which she had the right to be heard and was heard before the council. She makes no charge of fraud in connection with the assessment of her property, and, without such a charge, the determination of the council is final. (*Duncan* v. *Ramish,* 142 Cal. 686, [76 Pac. 661]; *Los Angeles etc. Co.* v. *County of Los Angeles,* 162 Cal. 164, [121 Pac. 384].)

2. The second count is based entirely upon the following facts: Plaintiff having allowed her assessment to become delinquent became liable for the five per cent penalty, with costs, provided by the law. (Street Opening Act, sec. 22.) Plaintiff concedes that she thus became liable for this penalty, but insists that the penalty should be imposed upon the net amount due from her to the city; or, in other words, that it should not be estimated upon the sum of $13,618.10, but should be estimated upon the difference between that sum and the amount of the award in her favor in the condemnation proceeding. But the answer to this is that whatever be thought to be plaintiff's equity in this regard, the whole matter is under statutory control, and a reading of the statute discloses that it contemplates that the five per cent delinquency shall be estimated upon the total of the assessment. A reading of sections 22 and 24 of the act discloses that the penalty attaches immediately upon the failure of the property owner to pay within the time limited, and that this penalty, since it thus

attaches, is to be estimated upon the total amount of the assessment. The only provision for an offset is found in section 21, which provides that the property owner may demand of the street superintendent that there be offset against the assessment the amount to which he is entitled under any award for his property taken, and the section then proceeds: "Thereupon, if said amount is equal to or greater than such assessments, *including any penalties and costs due thereon,* the assessments shall be marked 'paid by offset'; and if the said amount is less than the assessments, and any penalties and costs due thereon the person demanding such offset shall at the same time pay the difference to the street superintendent in money and the assessment shall on such payment, be marked paid, the entry showing what part thereof is paid by offset and what part in money." It is thus made doubly plain that the five per cent penalty was to be imposed upon the total amount of the assessment.

For these reasons the judgment appealed from is affirmed.

Lorigan, J., and Melvin, J., concurred.