[Civ. No. 2391.    Second Appellate District.—December 10, 1917.]

E. M. NUTTING, Respondent, v. CITY OF LOS ANGELES (a Municipal Corporation), et al., Appellants.

STREET ASSESSMENT—OPENING OF STREET UNDER ACT OF 1903—PRO-CEEDINGS OF CITY COUNCIL—WHEN CONCLUSIVE.—In view of section 19 of the Street Opening Act of 1903 (Stats. 1903, p. 376), providing that the action of the city council upon objections to assessments shall be final and conclusive, an assessment must be sustained unless it be shown that the council refused to decide, upon the merits, the objections urged against the assessment, and instead thereof willfully based its order upon illegal considerations which were inconsistent with making an assessment in proportion to benefits to be derived from the improvement, and which in effect amounted to fraud upon the rights of the property owner.

ID.—ACTION TO AVOID ASSESSMENT — FAIRNESS OF CITY COUNCIL.— In this action by a property owner to have an assessment for street-opening proceedings declared void, to enjoin the collection of the assessment, and to have the title of his property quieted against the same, it is held that the record wholly fails to establish the charge that the city council acted wrongfully and illegally, or that the assessment resulted from anything other than an honest attempt to make it in proportion to benefits.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lewis R. Works, Judge.

The facts are stated in the opinion of the court.

Albert Lee Stephens, City Attorney, Charles S. Burnell, Assistant City Attorney, and Arthur M. Ellis, for Appellants.

E. M. Nutting, *in pro. per.*, for Respondent.

CONREY, P. J.—Appeal by the defendants from the judgment. By his action the plaintiff seeks to have it determined that an assessment levied against his property to pay expenses of a street-opening proceeding is void; to enjoin the defendants from proceeding to enforce the assessment; and to quiet his title against said assessment. The prayer of his complaint further demands that under and by virtue of article 26a of the Street Opening Act of 1913, as amended [Stats. 1913, p. 433], (being the act under which the proposed street opening has been conducted), the defendant city of Los Angeles and its officers be directed to prepare and levy a reassessment upon the property within the assessment district and to levy against the plaintiff's property, known as parcel 39 in said assessment, a total assessment not exceeding the sum of fifteen thousand dollars. The court below determined that the assessment was void and ordered a reassessment to be made in accordance with certain directions which are contained in the decree.

After the board of public works had reported to the city council its assessment, the plaintiff and others filed their protests which were duly brought on for hearing before the council. The complaint in this action alleged, and the court found it to be true, that at said hearing the attitude of said council and its members was not fair and impartial, but was biased and prejudiced; that each of the members of the council was

then already determined to confirm and ratify the assessment without regard to what protests, evidence, or arguments might be offered at any hearing thereof. The complaint further alleged that prior to the hearing of said protests each and all of the members of the city council and of the members of the board of public works and the clerk of the board of public works had discussed with each other said assessment and the several assessments of the parcels within the assessment district and had agreed and determined upon the "unjust and unlawful apportionment constituting the said assessment" as the same was thereafter confirmed by the council. Upon this allegation the findings are silent.

The proceedings in question are for the opening, from Tenth Street southerly to Eleventh Street and from Twelfth Street southerly to Pico Street, of the street known as Broadway, in the city of Los Angeles. Prior to the commencement of these street-opening proceedings, Broadway had been opened as a street from Eleventh Street to Twelfth Street, and also existed as a principal business street of the city, extending for a long distance northerly from Tenth Street. There was also an extension of Broadway from Tenth Street southerly to Main Street. The proposed new extension of Broadway from Tenth Street to Eleventh Street forms an acute angle at its northerly end with said pre-existing extension of Broadway connecting with Main Street. Main Street is a north-and-south street, one block east of Broadway, which runs approximately parallel to Broadway. The assessment district of these street-opening proceedings includes property on both sides of the proposed new Broadway extension from Tenth to Eleventh and from Twelfth to Pico Streets, and also includes lands on each side of Broadway from Eleventh to Twelfth Street. Assessments numbered 15 to 37, which are the assessments of the lots fronting on Broadway between Eleventh and Twelfth, charged against those properties an aggregate sum much less in proportion to area and much less in actual amount than the assessments levied against the other portions of the assessment district. Respondent claims that by reason of such under-assessment the remaining portions of the district were' greatly over-assessed.

In conformity with allegations of the complaint, the court found that the parcels 15 to 37 were' grossly under-assessed; that they were not assessed in proportion to the benefits to

be derived from the opening of Broadway; and that each and all of said parcels have been assessed in amounts much less than they would have been respectively assessed if the assessment had been made in proportion to the benefits to be derived by said respective parcels from the opening of Broadway; that parcel No. 39 (property of the plaintiff) as shown on said assessment diagram is not assessed in proportion to the benefit to be derived by it from said opening of Broadway, but is grossly over-assessed, and is assessed in said proceeding an amount much in excess of the amount which said parcel 39 would have been assessed had said assessment been made upon each parcel of property in said assessment district in proportion to the benefits to be derived from said opening of Broadway.

All of the foregoing allegations of the complaint referring to the alleged wrongful methods of assessment and the alleged bias, prejudice, and predetermination on the part of the city officers were denied by the answer of the defendants. The defendants claim here that there is no evidence to sustain the findings as to those issues.

These street-opening proceedings were commenced by an ordinance adopted by the city council on May 27, 1913, whereby the council declared its intention to order the opening of the street between the limits described and to proceed with the matter of said improvement under the provisions of the Street Opening Act of 1903. At the trial of this action the plaintiff was permitted, over the objection of the defendants, to introduce in evidence certain portions of the minutes and records of the city council prior to May 27, 1913. The objection presented was that such minutes and records prior to that date were incompetent, irrelevant, and immaterial for the reason that, under the express provisions of the Street Opening Act of 1903, the proceedings are initiated by the adoption of an ordinance of intention, and that nothing done prior to that time is part of those proceedings. By the evidence thus received it was shown that on April 1, 1913, the city council ordered that the city attorney and engineer prepare the necessary ordinance for the opening of Broadway from Tenth to Eleventh Street and from Twelfth to Pico Street, and that the assessment district should be all the property which would face on the proposed opening between the streets named. On the fifteenth day of April, 1913, the city

council received and referred to the streets and boulevards committee a certain petition, No. 772, which was a petition purporting to be signed by or on behalf of certain owners of property facing on Broadway between Eleventh and Twelfth Streets, and wherein the petitioners made the following statement:

"In the matter of the assessment district to be assessed for the condemnation of land necessary for the proposed opening of Broadway between Tenth and Eleventh Streets, and Twelfth and Pico Streets, we beg to advise you that we are of the opinion that the property facing on Broadway between Eleventh and Twelfth Streets which is dedicated for street purposes by map No. 2289, should be included within the assessment district. We are of the opinion, however, that the assessment which would be levied against the property fronting on said Broadway between Eleventh and Twelfth Streets should not bear the same proportion of assessment as that between Tenth and Eleventh, or between Twelfth and Pico, we having dedicated said street to the city free of all encumbrances, and we consider that in making this suggestion that your honorable body will take into consideration this fact when the assessment for the condemnation of said land is being made."

On April 22, 1913, the streets and boulevards committee reported to the council concerning said petition No. 772, and recommended that the instructions theretofore given the city engineer and city attorney to prepare the necessary ordinances for the opening of Broadway between Tenth and Pico Streets be rescinded, and that there be prepared and presented to the council the necessary ordinance of intention for the opening of Broadway from Tenth to Eleventh Street and from Twelfth to Pico Street in one proceeding; and "that the board of public works in preparing the assessment shall take into consideration the prayer of the petitioners and shall levy the assessment according to petition No. 772." The minutes show that this report as read was adopted and the "map of the assessment district" was approved. The context shows that this map was merely a map of the proposed assessment district which had been presented with another petition (numbered 789) of property owners within the proposed district.

It should be kept in mind that all of these proceedings which occurred in April, 1913, preceded the ordinance of

May 27, 1913, and therefore are not a part of the procedure legally necessary and pertaining to the proceedings under the Street Opening Act of 1903 and upon which the validity of the assessment must depend. The evidence of such preliminary action on the part of the council cannot have any bearing upon the merits of this case, unless it can be maintained that in connection with other facts alleged and proved, it tended to establish the fact that the city council willfully and fraudulently refused to assess property in accordance with benefits received, and that it did willfully and fraudulently over-assess the property of the plaintiff in order that it might give credit to other property owners, because those owners had previously dedicated for street purposes that portion of Broadway between Eleventh and Twelfth Streets. The record is destitute of evidence that petition No. 772 and the approval thereof by the council was ever relied upon or used in any manner by the board of public works or city council in their proceedings conducted pursuant to the ordinance of May 27, 1913, unless it be true that the assessment itself as finally approved by the council furnishes evidence sufficient to establish that it was made and intended to be made upon the basis of such petition and recommendation.

The assessment was made by the board of public works as the law requires. There is no evidence that the board of public works or any person connected with it ever knew anything about petition No. 772 or the recommendations or orders of the city council concerning that petition, to which we have referred. Neither was the board bound to take notice thereof. Viewing the assessment as made by the board of public works, it stands before us the same as if said preliminary proceedings had not existed, and it must be regarded as wholly uninfluenced thereby. When in due time the assessment as made by the board of public works and the protests of the plaintiff and other property owners came on for hearing before the city council, the record shows that the protestants were given a complete hearing. Thereupon the assessment as made by the board of public works was approved by the council without changes, except for the correction of some minor errors which may here be disregarded.

Section 19 of the Street Opening Act of 1903 (Deering's 1915 Gen. Laws, Act No. 3928), which provides for a hearing by the council of objections to the assessment, declares that

"the action of the council upon such objections and assessment shall be final and conclusive in the premises." Similar provisions are contained in other street assessment statutes which have been the subject of judicial investigation wherein the courts of this state have given full recognition to the power of the city council to render "final and conclusive" judgment concerning street assessments. *Duncan* v. *Ramish*, 142 Cal. 686, [76 Pac. 661], related to an assessment under the street improvement law commonly known as the Vrooman Act. The proceeding in that case was for grading, graveling, and other street work. Referring to the refusal of the trial court to admit evidence offered for the purpose of proving that the benefits accruing from the improvement of the street were not in excess of the damages caused thereby and also not in excess of the assessment against the lots for the expenses of the improvement, the supreme court said: "It is true that local assessments are said to be imposed on the theory that the property adjacent to the improvement receives special benefit therefrom. But this is a matter which is for the determination of the legislative authority of the state, acting through its established agencies for the government of political subdivisions, or directly by the legislature of the state, as that body may see fit. It is enough for the local property owner that he has a right to be heard before the city council upon the question, by filing a petition of remonstrance in the proceeding prescribed by law, setting forth his reasons why the improvement should not be made. Upon this the council must decide the question, and its decision is final." In *United Real Estate Co.* v. *Barnes*, 159 Cal. 243, [113 Pac. 167], the proceeding in question was under the act of March 6, 1889 (Stats. 1889, p. 70), providing for the opening of streets. It was held that the decision made by the council was conclusive upon the plaintiff, and *Duncan* v. *Ramish*, *supra*, was quoted as authority for the decision. Referring to *Duncan* v. *Ramish*, the court said: "This case, it is true, arose under the Vrooman Act in a proceeding for paving or macadamizing a street, and not under the Street Opening Act. But the legislative power of the State, exercised in both instances by the city council, is the same in one case as in the other, the provisions of the statute as to the proceedings in the council and the conclusive effect of its decisions are substantially the same and the same principles must apply." In

*Cake* v. *City of Los Angeles,* 164 Cal. 705, [130 Pac. 723], the action was one to recover moneys paid by the plaintiff under protest, her contention being that the assessment was void and also that she was compelled to pay a sum greater than that for which she was legally liable. That proceeding was under the Street Opening Act of 1903. The plaintiff had filed objections to the assessments, which objections were overruled by the city council. Judgment against the plaintiff was affirmed by the supreme court. In its decision that court said: "Plaintiff's allegation that the assessments upon her two lots were inequitable was a matter upon which she had the right to be heard and was heard before the council. She makes no charge of fraud in connection with the assessment of her property, and, without such a charge, the determination of the council is final.". Section 26a of the Street Opening Act of 1903 does not, in our opinion, change the rule which, as elsewhere stated in that statute, makes the council's decision, when acting within its jurisdiction, "final and conclusive."

It is the necessary effect of these decisions that the assessment challenged in the present case must be sustained unless the facts alleged and proved show that the city council refused to decide upon the merits the objections urged against the assessment, and that instead thereof it willfully based its order upon illegal considerations which were inconsistent with making an assessment in proportion to the benefits to be derived from the improvement, and which in effect amounted to a fraud upon the rights of the plaintiff. It is the contention of the plaintiff and it-is the theory of his action that these elements of fraud are presented and established in this case, and that in fact there was no "assessment" made, but only an arbitrary imposition. *Spring Street Co.* v. *City of Los Angeles,* 170 Cal. 24, [148 Pac. 217], is relied upon as sustaining this contention. That was a proceeding for the widening of Eighth Street, in the city of Los Angeles. After the board of public works had filed its assessment, protests were entered against it by certain property owners. Upon the hearing of those protests the council ordered that the board of public works file a new assessment, and that a report made to the council by the streets and boulevards committee with reference to the assessment be referred to the board of public works for consideration in making the new assessment. The

committee report had recommended "that the lots fronting
on Eighth Street be assessed the same amount as allowed for
land taken, and that the balance of the amount to be raised
be assessed equally per front foot on the land fronting on
Eighth Street." The reference to "amount as allowed for
land taken" was to the awards which (in the condemnation
suit which had been instituted in connection with the pro-
ceedings, as provided by the statute) had been made to the
owners of the lots fronting on Eighth Street. Thereafter the
board of public works prepared the assessment in accord-
ance with the instructions thus received, but presented with
such new assessment a report in which it said: "We are, how-
ever, still of the opinion, that the original assessment as made
by this board is proper and correct, and beg leave to invite
the attention of the honorable council to the several assess-
ments on lots situated in the middle of blocks, and which have
been assessed a comparatively small amount in this new assess-
ment, because the amount allowed for land taken was small,
whereas these inside lots are benefited more in proportion
to the lots on the corners, as they only have the Eighth Street
frontage." Protests were filed to this so-called new assess-
ment, urging that it was arbitrary, unjust, excessive, and
illegal, but, after hearing, the council confirmed it *in toto.* In
making its decision reversing a judgment which had affirmed
the validity of this assessment, the supreme court said: "The
effect of the assessment so made is not and may not be ques-
tioned. It canceled every dollar of the two hundred and
twenty-six thousand dollars awarded by the court in the con-
demnation proceedings for the taking of this private property
for a public use, under an implied omnibus finding that the
property of every person whose lands fronted on Eighth
Street was benefited at least to the amount of his award in
the condemnation proceedings for the taking of his property,
and was also benefited just a little more, that little being the
property owner's proportionate share of the expense of the
city in the matter of its condemnation proceeding, which ad-
ditional amount is contemplated by the suggestion contained
in the report of the streets and boulevards committee 'that the
balance of the amount to be raised be assessed equally per
front foot on the land fronting on Eighth Street.'" The su-
preme court held that the assessment was apparently made
"in an effort to see just how far the legislative agents and
mandatories might go in their taking of private property

without compensation, until told by the court that they had passed the outermost bound of law and reason. That bound has been reached and passed by the assessment in this case. It bears upon the face of the record, as here presented, convincing and conclusive evidence that no effort at all was made by the council to assess in proportion to benefits. It is impossible that under the exercise of any discretion in the matter it could be found that in every case the damage awarded by the court for the taking of the property was exactly or more than covered by the benefit which would accrue to the remaining property by the widening of the street. And it is also impossible that those separate pieces of property were, in addition, each one of them, benefited to the exact amount which it cost the city to take the condemned land. It is to strain credulity beyond the breaking point to ask that any such belief be for a moment entertained. . . . We believe the assessment here in question to be so manifestly and so grossly unjust upon the face of this record as to call for no extended argument for its condemnation. It was not even the *quasi*-judicial act of the board intrusted with the duty of making the assessment, the board of public works. That board apparently entered upon the performance of its duty with a due sense of responsibility justly pertaining to its judicial character. If the communication of the city council to them was a command, they felt compelled to obey it in the matter of the new assessment and did so under formal protest. If it was not a command, but merely a suggestion, then it was a suggestion of which their judgment did not approve, and their disapproval of which they formally expressed. . . . We hold that the record here presented furnishes convincing evidence that the assessment was ordered prepared without the slightest exercise of judicial discretion, and so unwarrantedly, arbitrarily, and unjustly, as to work a confiscation of the property and to be, therefore, in no legal sense an assessment at all."

We have examined in detail the many items of assessment shown by the record in this case and the extended arguments thereon by respondent wherein he contends that the amounts of the several assessments as compared with each other are so extremely and absurdly unreasonable as to compel the conclusion that the council did not exercise judgment according to law upon the matters presented for its consideration, and that instead thereof, the council willfully based its decision

upon illegal grounds.  So far as the merits of the assessment are concerned it may be that if the justices of this court were authorized to act as a court of direct appeal, they would order that the assessment be modified in some of the instances presented.  But it is not enough that we might differ with the members of the city council or that the judge of the trial court did so differ, as to the reasonableness of some of the items in question.  Those are matters about which the minds of reasonable men might reasonably differ.  That being so, the court may not interfere with that judgment of the city council which the law has declared to be "final and conclusive."

One or two instances will further illustrate the nature of plaintiff's contentions.  The total amount of the assessment is $1,210,038.  Of this large sum $299,544 are charged against the south block, $702,968.45 against the north block, and $207,525.55 against the middle block.  The several assessments in the middle block are exactly equal to each other for each and every foot of frontage in that block.  The assessments in the two other blocks bear to each other no such relation of equality with respect to frontage.  *Can there be* reasons which in the minds of fair and reasonable men might justify these diversities in amounts of assessment as between the owners of the middle block fronting upon a section of Broadway as already established and the owners of the two other blocks which are to receive new street frontage by the opening of Broadway?  Undoubtedly the assessing officers had the right to take into consideration the fact that one block will not and that the remaining blocks will receive an entirely new street frontage; that the benefit to the middle block must arise merely from the development of the entire thoroughfare by reason of the new extension thereof; that no new corner lots are created in the middle block, and that the lots in that block are of equal depth.  Many diversities of condition apparently affect the other blocks which do not exist in the middle block.  Conceding, as we readily may, that the owners of the middle block were not entitled to have their assessments reduced on account of any previous dedication of land which they may have made for street purposes, the evidence produced to the court was insufficient to prove that such illegal credit was given in the assessments as made.

The record in this case cannot be paralleled with the Spring Street Company case, *supra,* as constituting an attempt to

absorb by assessment charges the awards of damage which had been made to the several parties for portions of land condemned for Broadway Street purposes. It is true that some of the assessments are for amounts exceeding the awards made, but there is such diversity in the amounts charged and in the reasonably possible causes in operation, that the amounts of the assessments furnish no evidence of a sinister purpose to enlarge assessments so as to overcome large awards of damages. Assessment No. 5, in the south block, against Anna M. Murphy, is twelve times the amount of damages awarded to her. Assessment No. 7, against Fitzwilliams, is less than twice his damages awarded. Assessments Nos. 47 to 50, against the Rindge Company, are only one-third of that company's damages awarded. Assessment No. 39, against the plaintiff in this action, amounts to nearly two and one-half times the award allowed for taking of the owner's adjoining property and for damages to this assessed property. These differences may be accounted for by a variety of possible reasons having reference to areas, frontages, values, and relative situations of the several parcels. The actual reasons which guided the minds of the assessors in reaching their conclusions upon the question of benefits received are beyond our range of inquiry. It is enough that, with regard to the relation between assessments and awards, the court may not say here, as was said under the facts shown in the Spring Street Company case, that the process of assessment was vitiated by a deliberate purpose to assess according to damages awarded and not in proportion to the benefits to be derived from the opening of the street.

According to our opinion, the record wholly fails to establish the charge that the officers of the city acted in these matters wrongfully and illegally in their proceedings, or that the assessment has resulted from anything other than an honest and fair attempt on their part to make the assessment in proportion to the benefits received and as the law requires.

The judgment is reversed.

James, J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 7, 1918.