[Civ. No. 13391. Third Dist. Apr. 30, 1973.]

DELMAR LEE BURNS, Plaintiff and Appellant, v.
CITY COUNCIL OF THE CITY OF FOLSOM et al.,
Defendants and Respondents.

**COUNSEL**

Delmar Lee Burns, in pro. per., Bruce A. Werlhof and Ralph Nase for Plaintiff and Appellant.

Ericksen, Ericksen, Lynch, Young & Mackenroth, David E. Mackenroth, Jones, Lamb, Jarboe & Boli for Defendants and Respondents.

**OPINION**

**PIERCE, J.**\*—Plaintiff Burns appeals from a judgment of dismissal following an order sustaining without leave to amend a general demurrer to his second amended complaint. We explain why we sustain the judgment.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Plaintiff is alleged\* to be a licensed real estate broker and general building contractor. Defendants are the City of Folsom, the members of its city council, Marvin J. May, its building inspector, Cyrus Thomas, its "administrator of city functions," and James E. Buchanan, its commissioner of city planning.

There are, and were during the time the acts and omissions referred to in the complaint occurred, 108 parcels of real property in Folsom zoned for single-unit dwelling houses and known as Natomas Heights Unit Number 9. On July 16, 1970, plaintiff possessed a commitment issued under section 235 of the National Housing Act of 1968 by the United States Housing and Urban Development Administration for the financing of 30 single-unit residential buildings, and had the right to purchase those lots. Plaintiff had certified plans and specifications for the construction of 30 single-unit residential buildings (presumably on those lots). Those plans complied with existing building laws, ordinances, rules and regulations of the City of Folsom then in effect. So it is contended.

On August 18, 1970, inspector May denied a building permit for which Burns had applied July 16, 1970. Although an earlier complaint had alleged a conflict between the plans and a city ordinance,[1] the current complaint pleaded compliance with all conditions for issuance when the permit was denied.

A claim was filed preceding the action. Burns prays for $345,000 general, and $12,000 special damages. That is the prayer of each count excepting one where $1 million punitive damages is sought.

The second count attempts to plead a vicarious liability. Under the third count the same general charges are tagged with complaint of a "conspiracy"; under the fourth, fraud, with a prayer for punitive damages. The fifth, and last, count, is a melange not readily distinguishable from those which precede it.

The trial court was requested to, and did, take judicial notice of certain ordinances. They are a part of the record and this court properly includes

---

\*This is a pleading case. Every fact we deal with is only an alleged fact (excepting those facts, readily apparent from the text of our discussion, which we judicially notice). It will rarely be necessary in this opinion repetitiously to use the phrase "it is alleged." We will do so sparingly.

[1] The ordinance (hereinafter quoted) was filed August 17, 1970. The first amended complaint had pleaded: "plaintiff's building plans provided for a 1,200 square foot building whereas said adopted ordinance provided a minimum of 1,500 square foot floor space for single family dwelling buildings." That verified allegation may be examined to impeach a later pleading. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 1037, p. 2615.)

reference to them within its statement of facts. (Evid. Code, § 452, subd. (b); Evid. Code, § 200; Witkin, Cal. Evidence (2d ed. 1966) Judicial Notice, § 189, p. 170, and cases cited.)

On January 5, 1970, the City of Folsom had adopted three building ordinances: ordinance 252 relating to plumbing and similar matters, ordinance 253 relating to building generally and ordinance 254 relating to heating, air conditioning, insulation, etc. These ordinances collectively adopted uniform minimum building codes (1967 editions) which fixed standards covering the respective subjects applicable to the matters within the scope of the three ordinances and created a hierarchy of city officials (comprising the building inspector who was to examine, inspect and approve or disapprove plans and specifications submitted by applicants, a planning board to whom dissatisfied applicants might appeal, and the city council and city administrator, who appear together to have been contemplated as substantially a "court of last resort" in matters relating to building applications).

On August 17, 1970, the city adopted ordinance 255 which states: "In buildings intended for one family dwelling use, such building shall contain not less than 1500 square feet of floor area as defined by the Uniform Building Code, and no habitable room, as therein defined shall have less than 100 square feet of superficial floor area." (See fn. 1, *supra*.)

### The Law Applicable

Plaintiff seeks money damages in an action against all defendants ex delicto. Defendants are public agents and the public agency for which they work. Plaintiff can only recover, therefore, if and to the extent that his pleadings meet the requirements of the California tort claims statute of 1963 as construed by the courts.[2] The claims statute is contained in Government Code sections 810 through 996.6.[3] The act is comprehensive. (See § 810 and comment thereto.)

*Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], sparked the enactment of the Tort Claims Act. In the evolution of California sovereign immunity law, its rule, its dicta and its reasoning are touchstones. We borrow one passage therefrom. It said: "We are not here faced with a . . . comprehensive legislative enactment designed to cover a field." (*Id.* at p. 218.) The Legislature, after *Muskopf,*

---

[2]We are not addressing ourselves to rights protected by the federal or state Constitution, e.g., actions in inverse condemnation.

[3]All section references herein are to the Government Code unless otherwise specified.

accepted the invitation implicit in the statement quoted. After a moratorium act, it directed the California Law Revision Commission to make studies covering the subject and to draft comprehensive legislation. The California Tort Claims Act was the result.

Both parties agree that the Tort Claims Act is dispositive of the issues of this appeal. They disagree, however, as to which sections are properly to be applied and as to how they should be interpreted. Plaintiff cites and relies upon section 820.2, granting immunity to public employees when his claimed acts or omissions are "the result of the exercise of the *discretion* vested in him, . . ." (Italics ours.) He contends that the act of issuing or refusing a building permit by a city official is not discretionary, but is ministerial. The city opposes that assumption but also refers us to section 818.4 and section 821.2. Section 818.4 provides: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

Section 818.4 refers to public agencies. Section 821.2, similarly worded, refers to public agents.

California Government Tort Liability (Cont.Ed.Bar 1964), authored by Professor Van Alstyne (who was also the commission's research consultant) states (§ 5.4, p. 121): "After each new recommended . . . section the commission inserted a comment explaining the section's purpose, . . . its meaning or application. These comments were before the legislature when it enacted [the sections of the code] . . . . Thus, they appear to constitute a useful source of legislative intent, especially where the sections were enacted without substantial alteration [as was section 818.4]." The comment under section 818.4 states: "Under this section, for example, the State is immune from liability if the State Division of Industrial Safety issues or fails to issue a safety order and *a city is immune if it issues or refuses to issue a building permit, even though negligence is involved in issuing or failing to issue the order or permit.*" (Italics ours.)

It does not necessarily follow that sections 818.4 and 821.2 grant an *absolute* immunity either to the city or its named employees. Both sections provided immunity regarding the issuance or denial of (building) permits only "where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

Professor Van Alstyne (op. cit., § 5.59, p. 167) states: "It might be argued that, if issuance of a license or permit had become a mandatory duty (as in *Ellis* and *Armstrong*),[4] the officer no longer could be regarded as 'authorized . . . to determine' . . . these matters, it would follow that *Ellis* and *Armstrong* are still good law. See Part V, Note 3, § 821.2."

Part V, note 3, section 821.2, provides in part as follows: "3. Extent of section. The immunity here applies to discretionary determinations on whether a license, permit, or other authorization should be issued, denied, suspended, or revoked. Although these determinations would fall within the general discretionary immunity of Govt C § 820.2, this section makes the immunity certain and forestalls any judicial redefinition of § 820.2 to exclude licensing proceedings. . . ."

In *Johnson v. State of California* (1968) 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], our Supreme Court has warned us against making a fetish of the term "exercise of discretion" by a too literal interpretation which may become a mere exercise in semantics. ■ Quoting (on p. 789) from *Lipman v. Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, at page 230 [11 Cal.Rptr. 97, 359 P.2d 465], it is stated: " 'Although it may not be possible to set forth a definitive rule which would determine in every instance whether a governmental agency is liable for discretionary acts of its officials, various factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which governmental liability might impair free exercise of the function, *and the availability to individuals affected of remedies other than tort suits for damages.*' " (Italics ours.)

This court, without deciding whether the limitation of immunity implicit in the phrase twice-quoted: "where the public entity or an employee . . . is authorized . . . to determine whether or not such authorization should be issued, denied, suspended or revoked" equates with the words "exercise of a discretion," does believe that the same factors expressed above originating in *Lipman* are properly usable to determine the existence or nonexistence of immunity under sections 818.4 and 821.2.

■ Also, this court, applying the factors quoted to the facts pleaded and those judicially noticed, has concluded that immunity exists in the case at bench under sections 818.4 and 821.2.

---

[4]*Ellis* v. *City Council* (1963) 222 Cal.App.2d 490 [35 Cal.Rptr. 317]; *Armstrong* v. *City of Belmont* (1958) 158 Cal.App.2d 641 [322 P.2d 999]. These cases are pre-California Tort Claims Liability Act. Liability against public officers for failure to perform mandatory duties was asserted.

When the building inspector denied the building permit, he had no mandatory duty to issue it. Even if we were to assume that when the city adopted ordinance 255, quoted above, it had done so with improper motives (see *G & D Holland Construction Co.* v. *City of Marysville* (1970) 12 Cal.App.3d 989 [91 Cal.Rptr. 227]), any such assumption would, of course, be premature; that could not affect the result.

In reaching that conclusion, this court relies most heavily upon the policy factor last-quoted above. If, in denying Burns' application for a building permit, the city and its hierarchy of officials, had acted negligently or had otherwise erred—for whatever reason—the remedy of mandamus existed. Instead, Burns was wholly preoccupied with monetary remuneration, including punitive damages. He did not even wait to exhaust the administrative remedies available to him under city ordinance.

By emphasizing the policy factor, availability of another remedy, we do not reject other policy factors—importance to the public of the function involved and the extent to which governmental liability might impair free exercise of the function. We deem it unnecessary to discuss them.

Judgment affirmed.

Friedman, Acting P. J., and Janes, J., concurred.

A petition for a rehearing was denied May 16, 1973, and appellant's petition for a hearing by the Supreme Court was denied June 28, 1973.