[S.F. No. 23366. Feb. 3, 1977.]

RICHARD MORRIS, Plaintiff and Appellant, v.
COUNTY OF MARIN, Defendant and Respondent.

**COUNSEL**

Hoberg, Finger, Brown & Abramson, Hoberg, Finger & Brown and Richard H. Carlson for Plaintiff and Appellant.

Douglas T. Maloney, County Counsel, Allen A. Haim, Deputy County Counsel, Boornazian, King & Schulze, George King and James L. McIntosh for Defendant and Respondent.

## OPINION

**TOBRINER, J.**—Before issuing a building permit, a county is required by Labor Code section 3800 to ensure that the applicant for the permit possesses adequate workers' compensation insurance coverage as defined in various provisions of the Labor Code. Plaintiff, a worker who sustained serious injuries while working on a construction site in Marin County, alleges that the county failed to comply with this statutory obligation and that, as a consequence, he has been unable to obtain compensation for his injuries; he seeks to recover from the county the damages allegedly caused by the county's breach of its statutory duty. The trial court ruled in favor of the county, concluding that even if the county had failed to comply with its statutory obligation, it could not be held liable for monetary damages. Plaintiff appeals from that adverse ruling.

We have concluded that the judgment of the trial court should be reversed. As we explain, under Government Code section 815.6 a public entity is liable for an injury proximately caused by its failure to discharge a mandatory duty designed to protect against the risk of a particular kind of injury; Labor Code section 3800 embodies just such a duty. Although defendant claims that section 3800 is "directory" rather than "mandatory," the "directory-mandatory" distinction, as we shall point out, does not apply in this context, and past authorities demonstrate beyond question that section 3800 imposes a "mandatory" duty within the meaning of section 815.6.

Defendant alternatively contends that it is immune from liability under sections 818.4 and 818.2 of the Government Code, provisions which assertedly insulate a public entity from liability for damages caused by *any* activity related to the issuance of a permit or the failure to enforce a law. As we explain, however, the language, legislative history, and judicial application of sections 818.4 and 818.2 demonstrate that these provisions do not create the "absolute immunity" that defendant urges, but instead only shield a public entity from liability flowing from activities involving the exercise of governmental discretion. Because in

the present case the county enjoyed no discretion to ignore the dictates of Labor Code section 3800, we conclude that the specific immunities of sections 818.4 and 818.2 constitute no bar to plaintiff's cause of action.

## 1. *The facts of the present case.*

The facts of this case, as revealed by the allegations of plaintiff's first amended complaint, are not complex. In July 1972, defendant Marin County issued a building permit to Guy Cahoon authorizing construction work on a building located in Muir Beach. Contrary to the requirements of Labor Code section 3800, the county, in issuing the permit, did not require Cahoon to file a "certificate of insurance" establishing that he had obtained a valid policy of workers' compensation insurance in a form approved by the Insurance Commissioner. In fact, at the time he received the permit and thereafter Cahoon carried no such insurance.

A little more than a month after the issuance of the permit, plaintiff Richard Morris fell from a platform while performing construction work in the course and scope of his employment for Cahoon. As a result of the fall, Morris sustained severe injuries resulting in permanent paraplegia. If appropriate insurance coverage had been provided as required, Morris would have been entitled to recover more than $200,000 in workers' compensation benefits; because no such insurance was in force, Morris has been unable to obtain any benefits to compensate him for his injuries.[1] Asserting that the county's failure to fulfill its statutory obligation proximately caused his uncompensated injuries, plaintiff contended that the county should be held liable for such damages.

Defendant county demurred to the complaint, contending that Labor Code section 3800 did not impose a "mandatory" duty on the county, and that, in any event, the county was immune from liability under Government Code sections 818.4 and 818.2. By minute order, the trial court sustained the demurrer without leave to amend, and thereafter entered judgment in favor of defendant.

---

[1] After instituting the present action, plaintiff filed an application for compensation with the Workers' Compensation Appeals Board, seeking to obtain benefits through the Uninsured Employers Fund. (See Lab. Code, § 3715 et seq.) The board awarded plaintiff temporary total disability of $105 per week and permanent disability of $70 per week to continue indefinitely, plus reasonable medical benefits. Although his employer has not paid the award, and has since been adjudicated a bankrupt, plaintiff had not obtained payment from the Uninsured Employers Fund at the time this appeal was filed because, as of that date, the fund was bankrupt. In September 1976, the Legislature

2. *Labor Code section 3800 imposes a "mandatory duty" on counties to ensure that applicants for building permits carry workers' compensation insurance; under Government Code section 815.6, a county may be held liable for injuries proximately resulting from its failure to discharge such duty.*

■ Labor Code section 3800 provides in relevant part that "[e]very county . . . which requires the issuance of a permit as a condition precedent to the construction, alteration, improvement, demolition or repair of any building . . . shall require that each applicant for such permit have on file or file . . . [a] certificate of insurance [which states] that there is in existence a valid policy of workmen's compensation insurance in a form approved by the Insurance Commissioner. . . ." (Italics added.)[2]

In contending that the county may be held liable for damages resulting from its alleged failure to comply with section 3800, plaintiff relies on Government Code section 815.6, a provision of the California Tort Claims Act, which reads in full: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge

appropriated additional money for the fund (Stats. 1976, ch. 1036, § 21, No. 5, Deering's Adv. Legis. Service, p. 536), but nothing in the record suggests that plaintiff has as yet received any such benefits.

[2]Section 3800 provides in full:

"Every county or city which requires the issuance of a permit as a condition precedent to the construction, alteration, improvement, demolition or repair of any building or structure shall require that each applicant for such permit have on file or file

"(1) A certificate of consent to self-insure issued by the Director of Industrial Relations, or

"(2) A certificate of workmen's compensation insurance issued by an admitted insurer, or

"(3) An exact copy or duplicate thereof certified by the director or the insurer.

"The certificate of insurance shall state that there is in existence a valid policy of workmen's compensation insurance in a form approved by the Insurance Commissioner. The certificate shall show the expiration date of the policy. No insurer shall issue such certificate unless the full deposit premium on the policy has been paid, and the insurer shall give the county or city at least 10 days' advance notice of the cancellation of the policy.

"This section shall not apply if

"(1) The permit is for one hundred dollars ($100) or less, or

"(2) The applicant for the permit signs a certificate which reads as follows, or the wording of which has been approved by the Director of Industrial Relations:

" 'I certify that in the performance of the work for which this permit is issued I shall not employ any person in any manner so as to become subject to the workmen's compensation laws of California.'

"If, after making such certificate, the applicant for the permit should become subject to the workmen's compensation provisions of this code, he shall forthwith comply with the provisions of Section 3700 or his permit shall be deemed revoked."

the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

Defendant county concedes, as it must, that the requirements of Labor Code section 3800 were intended to protect against the very risk of uncompensated injury suffered by plaintiff in the instant case; moreover, because this case arises on demurrer, we must assume, as alleged in the complaint, that defendant failed to use reasonable diligence to comply with section 3800. Defendant contends, nonetheless, that section 815.6 is not applicable here, maintaining that Labor Code section 3800 does not impose a "mandatory duty" on the county within the meaning of section 815.6.

The explicit language of section 3800 refutes defendant's contention. As we have seen, the section provides that "[e]very county [which issues a building permit] . . . *shall require that each applicant* . . . have on file or file . . . [a] certificate of insurance." (Italics added.) In turn, Labor Code section 15, one of the general provisions governing the interpretation of specific sections of the Labor Code, explicitly declares that " '[s]hall' is mandatory and 'may' is permissive." In light of this clear statutory language, and the evident purpose of the provision, there can be no question but that section 3800 imposes a "mandatory duty" on the county within the meaning of section 815.6.[3]

The numerous cases previously decided under section 815.6, in sustaining the applicability of that section to situations of statutorily mandated duties, uniformly support this conclusion. In *Sullivan* v. *County of Los Angeles* (1974) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865], for example, we held that Penal Code section 1384 imposed upon a county a mandatory duty to release a prisoner when a criminal action was dismissed, and that the county could be held liable for damages resulting from the breach of such a duty. In reaching this conclusion, we relied upon the language of Penal Code section 1384 which provided that "[i]f a court directs the action to be dismissed, the defendant *must,* if in custody, be discharged therefrom. . . ." (Italics added.)

[3]Defendant asserts that not only does section 3800 not embody a "mandatory" duty, but, indeed, that it does not even authorize a county to deny a building permit to an applicant who fails to file a certificate of insurance. This contention is patently frivolous, for such an interpretation would render the provision entirely meaningless. The concluding sentence of section 3800 leaves no doubt that the Legislature intended the filing of a "certificate of insurance" to constitute a condition precedent to the issuance of a building permit.

Similarly, in *Bradford* v. *State of California* (1973) 36 Cal.App.3d 16 [111 Cal.Rptr. 852], the Court of Appeal, applying the obligatory language of sections 11116.6 and 11117 of the Penal Code, held that the sections imposed a "mandatory duty" on the county to record the fact that criminal charges against plaintiff had been dismissed. Every other decision decided under section 815.6 has held that comparable statutory language imposed a "mandatory duty" within the meaning of the provision. (See, e.g., *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 693-696 [94 Cal.Rptr. 421, 484 P.2d 93]; *Elson* v. *Public Utilities Commission* (1975) 51 Cal.App.3d 577, 581-582 [124 Cal.Rptr. 305]; *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053 [84 Cal.Rptr. 27]; *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375 [40 Cal.Rptr. 863].)

In an attempt to escape the clear import of section 3800's explicit language and purpose, defendant invokes a series of cases which discuss the question whether statutory requirements are to be accorded "directory" or "mandatory" effect (*Gowanlock* v. *Turner* (1954) 42 Cal.2d 296, 301 [267 P.2d 310]; *Castorena* v. *City of Los Angeles* (1973) 34 Cal.App.3d 901, 908 [110 Cal.Rptr. 569]; *Adler* v. *City Council* (1960) 184 Cal.App.2d 763, 774-775 [7 Cal.Rptr. 805]); the county contends that under these cases section 3800 should be interpreted as "directory" rather than "mandatory."

In pressing this argument, however, defendant simply confuses the "mandatory duty" terminology of section 815.6 with the entirely distinct and unrelated legal doctrine pertaining to "directory" or "mandatory" provisions. ▮ As used in section 815.6, the term "mandatory" refers to an obligatory duty which a governmental entity is required to perform, as opposed to a permissive power which a governmental entity may exercise or not as it chooses. ▮ By contrast, the "directory" or "mandatory" designation does not refer to whether a particular statutory requirement is "permissive" or "obligatory," but instead simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates. (See, e.g., *Pulcifer* v. *County of Alameda* (1946) 29 Cal.2d 258, 262-263 [175 P.2d 1]; *French* v. *Edwards* (1872) 80 U.S. (13 Wall.) 506, 511 [20 L.Ed. 702, 703]; *Ricardo* v. *Ambrose* (3d Cir. 1954) 211 F.2d 212, 220-221.)[4]

---

[4]Many statutory provisions which are "mandatory" in the obligatory sense are accorded only "directory" effect. For example, while a governmental entity has an obligatory duty to observe the provisions of California's "open meeting" law (Gov.

Thus, for example, if a court determines that a city council's failure to comply with a particular procedural step in enacting an ordinance does not invalidate the resulting ordinance, which is the culmination of those steps, the procedural requirement is referred to as "directory." (See, e.g., *Cake* v. *City of Los Angeles* (1913) 164 Cal. 705, 709-710 [130 P. 723] (tax assessment valid though not adopted within time limit prescribed by statute); *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 931 [120 Cal.Rptr. 707, 534 P.2d 403] (wage resolution valid though enacted prior to date specified in city charter); *Castorena* v. *City of Los Angeles* (1973) 34 Cal.App.3d 901, 908 [110 Cal.Rptr. 569] (reapportionment ordinance valid though enacted subsequent to charter designated deadline); accord *Garrison* v. *Rourke* (1948) 32 Cal.2d 430, 434-436 [196 P.2d 884] (judicial decision valid though rendered after statutorily prescribed period).) If, on the other hand, a court concludes that the failure to comply with a procedural requirement does invalidate the ordinance, the requirement is designated "mandatory." (See, e.g., *Pulcifer* v. *County of Alameda, supra,* 29 Cal.2d 258, 262-263 (ordinance increasing compensation of elected official invalid because not enacted at least six months prior to election as provided by city charter); accord *French* v. *Edwards, supra,* 80 U.S. (13 Wall.) 506, 511-512 [20 L.Ed. 702, 703-704] (tax sale invalid where statutory requirement calling for sale of smallest quantity of property as possible not fulfilled); *Carter* v. *Seaboard Finance Co.* (1949) 33 Cal.2d 564, 573 [203 P.2d 758] (sale transaction invalid because contract did not itemize fees as required by statute).)

As Chief Justice Gibson explained in *Pulcifer* v. *County of Alameda, supra,* 29 Cal.2d 258, 262, there is no simple, mechanical test for

Code, § 54950 et seq.), and can be enjoined from violating or mandated to follow such provisions (Gov. Code, § 54960), California decisions to date have uniformly construed such provisions as having "directory" effect, and thus have refused to invalidate governmental acts, such as the promulgation of an administrative regulation, even when the governmental entity improperly discussed the matter at a nonpublic meeting. (See, e.g., *Stribling* v. *Maillard* (1970) 6 Cal.App.3d 470, 474-475 [85 Cal.Rptr. 924]; *Old Town Dev. Corp.* v. *Urban Renewal Agency* (1967) 249 Cal.App.2d 313, 329 [57 Cal.Rptr. 426].)

It is true that courts have not always been careful to confine the use of the "directory-mandatory" terminology to its proper context, and have sometimes referred to the doctrine in cases in which it was completely inapposite. (See, e.g., *Gowanlock* v. *Turner, supra,* 42 Cal.2d 296, 301.) The great bulk of the cases which have invoked the doctrine, however, do recognize that the "directory-mandatory" distinction is concerned only with whether a *particular remedy*—invalidation of the ultimate governmental action—is appropriate when a procedural requirement is violated; even when invalidation is not appropriate, other remedies—such as injunctive relief, mandamus or monetary damages—may be available to enforce compliance with the statutory provision. Indeed, the availability or unavailability of alternative remedies may have an important bearing on whether a procedure is to be accorded "directory" or "mandatory" effect.

determining whether a provision should be given "directory" or "mandatory" effect. "In order to determine whether a particular statutory provision . . . is mandatory or directory, the court, as in all cases of statutory construction and interpretation, must ascertain the legislative intent. In the absence of express language, the intent must be gathered from the terms of the statute construed as a whole, from the nature and character of the act to be done, and from the consequences which would follow the doing or failure to do the particular act at the required time. [Citation.] When the object is to subserve some public purpose, the provision may be held directory or mandatory as will best accomplish that purpose [citation]. . . ."[5]

In the instant case, however, we have no occasion to determine whether section 3800 is to be given "directory" or "mandatory" effect. That issue would be relevant only if we were concerned with whether the county's failure to comply with section 3800 rendered the employer's building permit invalid, that is, whether the end result of the procedural steps—the issuance of the permit—would be voided. Of course, the validity or invalidity of the employer's building permit is completely immaterial to the issue at bar. The relevant question here, instead, is simply whether the county was under an obligatory duty to ensure that a building permit applicant carries workers' compensation insurance, so that the county may be subjected to civil liability for damage caused by its failure to fulfill that obligation.

As we have already noted, the statutory language makes quite clear that the Legislature intended the statutory requirements to be obligatory rather than permissive; section 3800 does not "request" the county's assistance, nor "solicit" the county's aid, in policing compliance with Labor Code provisions, but rather *requires* the county to ascertain that *each applicant* for a building permit carries workers' compensation insurance. **(1b)** We conclude that section 3800 imposes a "mandatory duty" within the meaning of section 815.6.[6]

---

[5]In *Gowanlock* v. *Turner, supra,* 42 Cal.2d 296, 301, the court stated in dictum that: "The requirements of a statute are directory, not mandatory, unless means be provided for its enforcement." Although this passage has, on occasion, been relied on by other courts (see *Castorena* v. *City of Los Angeles, supra,* 34 Cal.App.3d 901, 908; *Adler* v. *City Council, supra,* 184 Cal.App.2d 763, 774) it is not an accurate expression of the applicable California caselaw on the subject. (See, e.g., *Carter* v. *Seaboard Finance Co., supra,* 33 Cal.2d 564, 573.) The test enunciated by Chief Justice Gibson in *Pulcifer* (quoted in text above) provides a more accurate statement of the prevailing doctrine.

[6]In concluding that Labor Code section 3800 embodies a "mandatory" duty, we do not hold that every statute which uses the word "shall" is obligatory rather than permissive. Although statutory language is, of course, a most important guide in determining

Accordingly, the county may be held liable under Government Code section 815.6 for damage resulting from its alleged failure to comply with the requirements of Labor Code section 3800.

3. *The immunity afforded by Government Code sections 818.4 and 818.2 attaches only to discretionary activities and does not shield the county from liability relating to its failure to comply with the mandatory duty imposed by Labor Code section 3800.*

Defendant alternatively contends that even if liability does attach by virtue of section 815.6, as we have held, the trial court's decision should still be sustained because the county enjoys immunity from liability by virtue of Government Code sections 818.4 and 818.2. Defendant asserts that these two sections afford the county broad immunity with respect to any injury resulting from the county's "issuance of a permit" or "failure to enforce a law." Since the county's alleged wrongdoing in the instant case relates to its issuance of a building permit and could also be characterized as a failure to enforce the provisions of the Labor Code, the county claims it enjoys an absolute immunity from suit, and may not be held liable even for failing to comply with the mandate of Labor Code section 3800.

Plaintiff disputes the county's interpretation of sections 818.4 and 818.2, asserting that those provisions only immunize a public entity from liability flowing from *discretionary* acts. Since the county retained no discretion to ignore the requirements of section 3800, plaintiff maintains that the invoked immunities do not apply. As we shall explain, the language, legislative history and judicial interpretation of the sections all support plaintiff's construction of the statutes.

a. *Section 818.4.*

We begin with section 818.4. The section provides in relevant part that "[a] public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit . . . where the public entity or an

legislative intent, there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion. (See, e.g., Gov. Code, § 26501 ("[a] district attorney shall institute proceedings . . . for the arrest of persons . . . reasonably suspected of public offenses when he has information that such offenses have been committed"), construed in *Taliaferro* v. *Locke* (1960) 182 Cal.App.2d 752, 757 [6 Cal.Rptr. 813].) Our observations here, of course, pertain only to the case before us.

employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." Although defendant reads this language as affording immunity for both discretionary and ministerial acts relating to the granting or denial of a permit, numerous courts and commentators have pointed out that the section's language explicitly limits immunity to instances "where the public entity or an employee of the public entity is authorized *to determine whether or not* such [permit] should be issued [or] denied. . . ." (Italics added.) (See, e.g., *Elson* v. *Public Utilities Commission, supra,* 51 Cal.App.3d 577, 587-588; *Burns* v. *City Council* (1973) 31 Cal.App.3d 999, 1003-1004 [107 Cal.Rptr. 787]; Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1964) § 5.59, p. 167.)

A public entity, of course, does not have authority to determine "whether or not" to issue a permit when it only performs a ministerial, nondiscretionary duty. In such cases, the "basic policy decision" has already been made at a different governmental level. (See *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 793-794 [73 Cal.Rptr. 240, 447 P.2d 352].) Thus, the statutory language itself suggests that the section's immunity attaches only to discretionary activities.

The available legislative history confirms this interpretation. As Professor Van Alstyne, one of the principal architects of, and commentators upon, the California Tort Claims Act, explains: "As far as public entity immunity is concerned, Government Code section 818.4 appears to be a continuation of prior law under which *discretionary* licensing activities were deemed 'governmental' and thus nonactionable." (Italics added.) (Van Alstyne, Cal. Government Tort Liability (Cont.Ed.Bar 1964) § 5.59, p. 166; cf. *Ellis* v. *City Council* (1963) 222 Cal.App.2d 490, 497-498 [35 Cal.Rptr. 317]; *Armstrong* v. *City of Belmont* (1953) 158 Cal.App.2d 641, 642-643 [322 P.2d 999].)

Moreover, in commenting upon section 818.4, the legislative committee declared that: "[T]his section, like section 818.2, would be unnecessary but for a possible implication that might arise from Section 815.6." Section 818.4 would have been quite "necessary" if the Legislature had intended to immunize public entities from liability arising from *ministerial* acts, for no other section in the tort claims act provides such immunity for nondiscretionary activities. The section could have been considered "unnecessary" only if the Legislature intended it to apply only to *discretionary* activities that were afforded a general immunity through

sections 820.2 and 815, subdivision (b).[7] Seen in this light, the "possible implication" of section 815.6 which the Legislature desired to disavow was simply an interpretation which would render a public entity liable for a discretionary permit or licensing decision whenever the entity was under a statutory obligation to make such a discretionary decision. The comment demonstrates that the Legislature intended to preserve immunity when the entity retained such discretion. In the absence of such discretion, however, the legislative comment supports the conclusion that no immunity is afforded.[8]

---

[7]It may be argued that in interpreting section 818.4 as immunizing only "discretionary" activities, we render the section superfluous since such discretionary activities are already immunized by virtue of sections 820.2 and 815, subdivision (b). As the Legislature itself explicitly recognized, however, many of the individual immunity provisions which it enacted simply represent specific applications of the general "discretionary" immunity principle; the legislative committee explained that "[t]hese specific immunities are stated in statutory form so that the liability of public entities and employers may not be expanded by redefining 'discretionary immunity' to exclude certain acts that had previously been considered as discretionary." (Legislative committee com. to Gov. Code, § 820.2.) Section 821.2, which parallels the language of section 818.4 but refers to public employees rather than public entities, is one of the provisions which the Legislature recognized as a specific application of the discretionary immunity principle; in like fashion it appears that section 818.4 was also intended to encompass only discretionary activities.

[8]Although the concurring opinion argues that a later portion of the legislative comment, indicating that the section affords immunity for negligence in the issuance of a building permit, conflicts with our interpretation of section 818.4, nothing in the cited portion of the comment specifies that immunity was intended to attach to negligence in both ministerial and discretionary permit decisions. As we explain in text, both the statutory language itself and the cases interpreting that language demonstrate that the section applies only to discretionary permit and licensing decisions.

Defendant's reliance on an isolated passage of the California Law Revision Commission's commentary on this section is equally unavailing. The passage in question states: "Public entities and public employees should not be liable . . . for negligent or wrongful issuance or revocation of licenses and permits. The government has undertaken these activities to insure public health and safety. . . . Far more persons would suffer if government did not perform these functions at all than would be benefitted by permitting recovery in those cases where the government is shown to have performed inadequately." (Cal. Law Revision Com., Recommendation Relating to Sovereign Immunity (1963) pp. 817-818.)

Contrary to defendant's contention, this passage does not indicate that section 818.4's immunity was intended to attach to both discretionary and nondiscretionary actions in this area. The passage quoted above is simply one segment of a general comment which states: "[t]he remedy for officials who . . . do not adequately enforce existing law, or who do not provide the people with services they desire, is to replace them with other officials. But their *discretionary* decisions in these areas cannot be subject to review in tort suits for damages if government is to govern effectively." (Italics added.) (*Id.,* at p. 817.) Moreover, in suggesting that liability should not be imposed because the public entity might choose to abandon its protective activities if it were held liable for negligence in providing such protection, the comment clearly refers only to discretionary activities which the public entity has the option of pursuing or not. When a mandatory duty is imposed by state law, the county cannot choose to abandon its protective role.

The cases which have arisen under section 818.4 uniformly support this reading of the section. The recent case of *Elson* v. *Public Utilities Commission, supra,* 51 Cal.App.3d 577 is perhaps the most clearly on point. In *Elson,* the plaintiff was injured when struck by a bus operated by the Blue and White Bus Company; plaintiff recovered a substantial judgment against the company but was unable to collect on the judgment because at the time of the accident, the company was not covered by liability insurance and subsequently had become insolvent. Plaintiff then instituted an action against the Public Utilities Commission, alleging that the commission knew that Blue and White did not carry liability insurance, and that despite a regulation requiring such insurance as a condition to continued operation of a bus company, the commission had failed to revoke Blue and White's operating authority in violation of its "mandatory duty" to do so.

After determining that the Public Utilities Commission was, indeed, under a mandatory duty to revoke a bus company's license whenever the company failed to carry adequate liability insurance, the *Elson* court addressed the commission's contention that, despite such a mandatory duty, it was immune from liability under section 818.4 because its misconduct arose from a "failure to . . . revoke . . . a license." The *Elson* court reviewed the statutory language and legislative history which we have noted and then rejected the commission's contention, concluding that section 818.4's immunity shields only discretionary activities and that "given the mandatory nature of the Public Utilities Commission's duty to revoke Blue and White's license, no immunity attaches by virtue of section 818.4." (51 Cal.App.3d at p. 589.)

In *Elton* v. *County of Orange* (1970) 3 Cal.App.3d 1053 [84 Cal.Rptr. 27], the Court of Appeal reached a similar conclusion. In *Elton,* a young child who had allegedly been severely mistreated and beaten in a foster home in which she had been placed by the county brought suit against the county, claiming that her injuries were proximately caused by the county's failure to discharge its mandatory duties of inspection, supervision and control of foster homes. The county sought immunity under section 818.4, contending that its alleged shortcomings were equivalent to the failure to revoke a permit or a license. The *Elton* court rejected this contention, pointing out that plaintiff's suit rested not on the county's neglect with respect to discretionary licensing activities, but rather on the county's failure to comply with mandatory standards of inspection and supervision dictated by state regulations. (3 Cal.App.3d at p. 1059.) (See, e.g., *Shakespeare* v. *City of Pasadena, supra,* 230

Cal.App.3d 375, 386; *Ellis* v. *City Council, supra,* 222 Cal.App.2d 490, 497-498; cf. *Burns* v. *City Council, supra,* 31 Cal.App.3d 999, 1003-1005.)

Contrary to defendant's suggestion, the case of *O'Hagan* v. *Board of Zoning Adjustment* (1974) 38 Cal.App.3d 722 [113 Cal.Rptr. 501] does not conflict with the interpretation of section 818.4 adopted in the cases cited above. In *O'Hagan,* a restaurant owner who was dissatisfied with the city's revocation of his use permit had challenged the revocation in a mandamus action and had succeeded in having the revocation set aside; the owner thereafter sought to recover damages which he had incurred as a result of the erroneous revocation. Unlike the governmental activity involved in the instant case, however, the revocation decision at issue in *O'Hagan* unquestionably involved a discretionary activity, including adjudication in a quasi-judicial revocation proceeding (38 Cal.App.3d at p. 731); under such circumstances, the *O'Hagan* court correctly held that the immunity of section 818.4 was applicable.

In the course of the decision, the *O'Hagan* court stated that "[the] statutory immunity [of section 818.4] is so strong that it even prevails over the liability imposed by section 815.6 for failure to discharge a mandatory duty." (38 Cal.App.3d at p. 726.) Although defendant interprets this statement as indicating that the statute's immunity attaches to both discretionary and nondiscretionary licensing activities, *O'Hagan* applied only to a discretionary activity, and thus the passage quoted above goes no further than to state that when such discretionary activity does result in injury, the public entity incurs no liability even if the entity was statutorily required to render such a discretionary decision. Nothing in the *O'Hagan* opinion indicates that the section's immunity attaches to a nondiscretionary, ministerial act involved in the licensing or permit process.

Furthermore, although the concurring opinion suggests that our conclusion in this regard necessarily implies that a governmental entity enjoys no immunity from liability arising, for example, out of its failure to detect inadequate or faulty wiring pursuant to building code regulations, we explicitly disavow any such extension of our holding. Government Code section 818.6 expressly provides that "[a] public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection of any property . . . for purposes of determining whether the property complies with or violates any enactment or contains a hazard to health or safety." (See also Gov.

Code, § 821.4.)[9] As the legislative comment to section 818.6 explains: "Because of the extensive nature of the inspection activities of public entities, a public entity would be exposed to the risk of liability for virtually all property defects within its jurisdiction if this immunity were not granted." ▪ In light of such purpose, we believe that section 818.6 must reasonably be construed to insulate a public entity from any liability which might arise as a result of an entity's failure to detect noncompliance with one of the myriad safety regulations contained in local or statewide building codes. The county's alleged wrongdoing in the instant case is, of course, clearly distinguishable from the matters encompassed by section 818.6.

▪ To reiterate, in the instant case, plaintiff seeks to impose liability on the county not for failure to discharge a discretionary governmental function, but rather for failure to perform a mandatory duty which the county could not in its discretion ignore. As we have seen, in enacting Labor Code section 3800 the Legislature has required the county to ensure, before issuing a building permit, that building contractors or other employers carry adequate workers' compensation insurance to protect their employees. Under the section, counties retain no discretion to waive such a requirement; as noted above, the Legislature has reached the basic policy decision that a "certificate of insurance" should be a mandatory prerequisite to the issuance of a building permit. Under these circumstances, we conclude that the county cannot claim the immunity afforded by section 818.4.

b. *Section 818.2.*

For similar reasons, the immunity provided by section 818.2 does not apply in this case. Section 818.2 provides in full: "A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." Although this statutory language, unlike that of section 818.4, does not specifically refer to the exercise of a discretionary authority, the legislative comment accompanying the provision leaves no doubt that the section was intended to encompass only discretionary law enforcement activity. That comment states: "This section recognizes that the wisdom of legislative or quasi-legislative

[9]Significantly, unlike section 818.4, section 818.6 contains no language limiting immunity to situations in which an entity has discretion to determine "whether or not" a safety or health hazard is present. In light of this difference in language and the purpose of the section, the immunity afforded by section 816.6 would attach to both ministerial and discretionary conduct in this area.

action, and the *discretion* of law enforcement officers in carrying out their duties, should not be subject to review in tort for damages if political responsibility for these decisions is to be retained." (Italics added.)

As we have seen, the instant case does not involve any such exercise of discretion. Thus, even if we assume that the immunity of section 818.2 could in some cases apply to entities other than traditional "law enforcement" agencies (cf. *Elton* v. *County of Orange, supra,* 3 Cal.App.3d 1053, 1059), we must still conclude that the section provides no sanctuary for the defendant in this case. In *Elson* v. *Public Utilities Commission, supra,* 51 Cal.App.3d 577, 589, the "Blue and White Bus Company" case discussed above, the Court of Appeal reached an identical conclusion in a clearly analogous factual setting.

4. *Conclusion.*

In enacting Labor Code section 3800, the Legislature has specifically required local entities to assure that workers who are injured on construction projects within their jurisdiction can obtain the benefits guaranteed them by this state's workers' compensation law. In light of this statutory requirement, workers may reasonably assume that whenever they agree to work for an employer who has obtained a building permit, they will be protected in the event they are injured in the course of such employment.

In the instant case, however, defendant Marin County allegedly neglected to comply with its statutory duty, and, as a result, plaintiff, now a permanent paraplegic, has been unable to obtain any compensation for his injuries. As we have explained, because section 3800 imposes a "mandatory duty" on the county which is intended to avert just such an uncompensated loss, the county is subject to liability for damages under Government Code section 815.6. Moreover, because the county enjoyed no discretion to ignore the mandate of section 3800, the county can claim no immunity under Government Code sections 818.4 and 818.2.

To uphold the position of the county would not only violate the letter of the statute but nullify its purpose. If we are to bestow immunity upon governmental entities that ignore the statutory requirement that the applicant for a building permit obtain workers' compensation insurance, the requirement becomes a dead letter. Future workers who rely upon the statute in the expectation that it will be enforced must inevitably find themselves unprotected and uninsured from injuries and

losses incurred in devastating accidents. Surely we cannot erase the statute itself from the books and expose workers to such serious harm in the face of the Legislature's protective concern.

The judgment in favor of the defendant is reversed.

Wright, C. J., Mosk, J., Richardson, J., and Sullivan, J.,* concurred.

**CLARK, J.,** Concurring.—Although Government Code section 815.6[1] by its terms would establish liability for violation of a mandatory duty,[2] the liability imposed is subject to immunity provisions. Section 818.4 immunizes public entities from liability for injury caused by erroneous issuance of permits. The language of section 818.4, the legislative committee comment to the section, the purpose of the immunity as set forth in the California Law Revision Commission report, and the history of the Tort Claims Act of 1963 establish that the immunity applies to erroneous issuance of building permits whether the error is due to discretionary or to ministerial determinations. Accordingly, I cannot agree with the majority's conclusion that permit immunity is applicable only to discretionary determinations.

However, I am satisfied that the entire Tort Claims Act of 1963 (§ 810 et seq.) is inapplicable to this action for breach of statutory duty imposed by Labor Code section 3800 because of the express terms of section 814.2 and its legislative comment. Rather, general principles of law are applicable, and plaintiff, being a member of the class protected by the statutory duty imposed by Labor Code section 3800, may maintain an action for its breach.

The importance of the issue decided by the majority calls for its discussion first. I assume in this part that the Tort Claims Act of 1963 is applicable. The applicability of the act will be discussed thereafter.

### MANDATORY-DISCRETIONARY

Section 815.6 provides: "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

[1]Unless otherwise indicated, all statutory references are to the Government Code.

[2]I agree with the majority that Labor Code section 3800 imposes a mandatory duty, dictating that local governments shall require provision for workers' compensation before granting a building permit.

of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

The Law Revision Commission's comment to the section reads: "This section declares the familiar rule, applicable to both public entities and private persons, that failure to comply with applicable statutory or regulatory standards is negligence unless reasonable diligence has been exercised in an effort to comply with those standards. Alarid v. Vanier, 50 Cal.2d 617, 327 P.2d 897 (1958) (setting forth general rule); Lehmann v. Los Angeles City Bd. of Educ., 154 Cal.App.2d 256, 316 P.2d 55 (1957) (applying rule to public entity). [¶] In the sections that follow in this division, there are stated some immunities from this general rule of liability."

The commission's comment makes clear that section 815.6 makes a public entity liable under the negligence per se doctrine. *Alarid* reiterated the settled rule that a presumption of negligence arises from the violation of a statute, although that presumption may be overcome by evidence of justification or excuse. (50 Cal.2d at p. 621.)

The county's issuance of a building permit without requiring compliance with Labor Code section 3800 establishes a presumption of negligence and public entity liability under section 815.6 unless the following sections provide for immunity.

One of the following sections, 818.4, provides: "A public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval order or similar authorization where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." Section 821.2 establishes a similar immunity for public employees. It is undisputed that the county was authorized to determine whether the building permit should issue.

The legislative committee comment to section 818.4 provides: "*This section, like Section 818.2, would be unnecessary but for a possible implication that might arise from Section 815.6.* It recognizes another immunity that has been recognized by the New York courts in the

absence of statute. Under the Federal Tort Claims Act, the immunity would be within the general discretionary immunity. Direct review of this type of action by public entities is usually available through writ proceedings or other proceedings to review administrative action or inaction. [¶] Under this section, for example, the State is immune from liability if the State Division of Industrial Safety issues or fails to issue a safety order and *a city is immune if it issues or refuses to issue a building permit even though negligence is involved in issuing or failing to issue the order or permit.*" (Italics added.)

The permit and license immunity section, if applicable, is controlling against the mandatory duty liability of section 815.6. "[T]he Tort Claims Act makes it unquestionable that the immunity for licensing activities prevails over the liability established by section 815.6 for failure to discharge a mandatory duty (legislative committee comment to § 818.4; Van Alstyne, Cal. Government Tort Liability, *supra,* § 5.58, p. 165)." (*O'Hagan* v. *Board of Zoning Adjustment* (1974) 38 Cal.App.3d 722, 731 [113 Cal.Rptr. 501].)

By its reference to section 815.6, the explanation as to the necessity for immunity, and the express disapproval of liability for negligence in issuing a building permit, the legislative committee comment to section 818.4 clarifies the extent of liability eliminated by that section. Immunity is not limited to acts within the discretion of the public entity but extends to the improper issuance of permits where the public entity was under a mandatory duty to deny the permit.

Section 815.6 only imposes liability for breach of a mandatory duty, and an immunity provision would not be necessary to protect the public entity from liability for the issuance of permits which it had discretion to deny; the duty would not be mandatory. The statement of immunity from negligence in issuance of building permit, in view of the earlier statement of necessity for the immunity provision, reflects the legislative intent that the immunity is not limited to discretionary determinations but extends as well to ministerial determinations involving the issuance of building permits.

Most important in this regard is that the legislative committee comment singles out building permits. To hold, as the majority does, that the building permit immunity is limited to mistake in the exercise of discretion would mean that section 818.4 has little or no application to

the issuance of building permits because the issuance does not ordinarily involve discretionary determination.

Discretionary immunity as defined by this court is limited to " *'basic policy decisions.'* " (Italics in orig.; *Tarasoff* v. *Regents of University of California,* 17 Cal.3d 425, 445-447 [131 Cal.Rptr. 14, 551 P.2d 334]; *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 793 [73 Cal.Rptr. 240, 447 P.2d 352].) It does not apply merely because the decision may be difficult, requiring technical expertise. In *Tarasoff,* this court rejecting discretionary immunity, recently held that government employed psychiatrists could be held liable for negligently failing to diagnose the dangerous propensities of patients and to warn potential victims.

Issuance of a building permit will rarely if ever involve a "basic policy decision." The plans either comply with the electrical, plumbing, foundation and other building code requirements and with the zoning requirements or the plans do not. Similarly, a builder either has obtained sufficient workers' insurance or he has not. Although creation of building codes and other requirements for a building permit may involve "basic policy decisions," the determination of compliance with those requirements and thus issuance or denial does not involve such a decision.

Because erroneously granting or denying a building permit would ordinarily result from error in determining compliance with the building code, zoning, or other requirement—obviously a ministerial function—the majority's holding today means that in almost every case of erroneously granting or denying there will be liability—directly contrary to the legislative comment. By specifically referring to building permits in its comment to section 818.4, the legislative committee made clear its intent that the permit and licensing immunity should apply to building permits. The only reasonable conclusion is that the immunity conferred by that section is not limited to discretionary acts but extends to ministerial mistakes in the issuance of a building permit.

The dual purpose of the section 818.4 immunity also shows that it must apply when the permit is improperly granted either as a result of error in a discretionary function or in a ministerial one.

The 1963 Report of the California Law Revision Commission, pages 817-818, states: "Public entities and public employees should not be liable for failure to make arrests or otherwise to enforce any law. They should not be liable for failing to inspect persons or property adequately

to determine compliance with health and safety regulations. *Nor should they be liable for negligent or wrongful issuance or revocation of licenses and permits. The government has undertaken these activities to insure public health and safety. To provide the utmost public protection, governmental entities should not be dissuaded from engaging in such activities by the fear that liability may be imposed if an employee performs his duties inadequately. Moreover, if liability existed for this type of activity, the risk exposure to which a public entity would be subject would include virtually all activities going on within the community.* There would be potential governmental liability *for all building defects,* for all crimes, and for all outbreaks of contagious disease. No private person is subjected to risks of this magnitude. In many of these cases, there is some person (other than the public employee) who is liable for the injury, but liability is sought to be imposed on government for failing to prevent that person from causing the injury. The Commission believes that it is better public policy to leave the injured person to his remedy against the person actually causing the injury than it is to impose an additional liability on the government for negligently failing to prevent the injury. And where no third party is liable—as in the case where a license application is denied—the aggrieved party has ample means for obtaining relief in the courts other than by tort actions for damages. *Far more persons would suffer if government did not perform these functions at all than would be benefited by permitting recovery in those cases where the government is shown to have performed inadequately.*" (See also, Van Alstyne, Cal. Government Tort Liability, *supra,* § 5.58, p. 166.)[3]

The grave potential liability created by today's decision is too apparent. For example, the determination whether the proposed wiring of a building complies with the building code is usually if not always a ministerial determination, and under today's majority decision public entities will face huge liabilities if required to repair approved but defective wiring or to compensate for fires caused by the defective wiring. While in the instant case the builder is bankrupt, the reasoning of the majority opinion would permit recovery against the public entity even if he were solvent.

Considering the magnitude of the potential liabilities, the Legislature and the legislative bodies of public entities will be forced to reconsider whether to repeal many health and safety regulations. It is no answer, as the majority suggest, that because the compensation insurance require-

---

[3]The Legislature adopted the commission's proposed section 818.4 with minor changes not relevant here.

ment is imposed by state law, the county may not refuse to enforce it. (*Ante,* p. 913, fn. 8.) The point is that the Legislature will be forced to choose among repealing health and safety requirements, continuing them but granting immunity, or continuing them with liability for lack of compliance. In my view, the commission's report quoted above, the legislative committee's comment, and the Legislature's subsequent adoption of section 818.4 establish that the Legislature has already chosen, picking the second alternative, determining the sound course is to continue such health and safety requirements without governmental liability for negligence.

The majority also attempt to avoid the plain effect of the commission's report by pointing out that a prior paragraph refers to "discretionary decisions." But that reference appears prior to the commission's addressing the specific problems of inspections, permits and licenses. To read the term "discretionary decisions" as modifying the paragraph quoted herein is not only contrary to the plain meaning of the paragraphs but also to the carefully articulated policy. Moreover, the inspection immunity is discussed in the quoted paragraph on the same basis as the permit immunity, and as the majority concedes the inspection immunity applies to ministerial as well as discretionary acts. (*Ante,* p. 916.)

Legislative committee comments and commission reports are highly persuasive—if not conclusive—statements of legislative intent as to the Tort Claims Act. On the basis of such statements, this court has overruled two of its own decisions, *Cabell* v. *State of California* (1967) 67 Cal.2d 150 [60 Cal.Rptr. 476, 430 P.2d 34, 34 A.L.R.3d 1154], and *Becker* v. *Johnston* (1967) 67 Cal.2d 163 [60 Cal.Rptr. 485, 430 P.2d 43]. (*Baldwin* v. *State of California* (1972) 6 Cal.3d 424, 435 [99 Cal.Rptr. 145, 491 P.2d 1121].)

The history of the Tort Claims Act also supports the conclusion that immunity for erroneously granting a building permit applies whether the error be categorized as discretionary or as ministerial.

Prior to *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], two general bases of sovereign immunity existed in California. First, although a public entity could be held liable for proprietary activities, "for torts committed in the course of a 'governmental function' there is no liability, unless the tort be classified as a nuisance." (55 Cal.2d at pp. 216-217.) The second basis for immunity was set forth in the *Muskopf* companion case, *Lipman* v.

*Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 229-230 [11 Cal.Rptr. 97, 359 P.2d 465]. Ordinarily public entities were not liable for discretionary conduct of their officials. Public officials and employees were also immune from liability for discretionary conduct within the scope of their authority. (*Id.,* at p. 233.) However, they were liable for acts outside their authority (*id.,* at pp. 234-235) and for ministerial acts (e.g., *Ellis* v. *City Council* (1963) 222 Cal.App.2d 490, 498 [35 Cal.Rptr. 317]).

*Muskopf* repudiated the first basis of immunity—an entity's immunity for governmental functions. As stated in *Lipman,* "[i]n *Muskopf* v. *Corning Hospital District, ante,* p. 211, we held that the rule of governmental immunity may no longer be invoked to shield a public body from liability for the torts of its agents who acted in a ministerial capacity." (55 Cal.2d at p. 229.) However, the discretionary immunity rules were reaffirmed by *Lipman,* which applied them.[4]

The Tort Claims Act was, of course, a legislative response to the *Muskopf* and *Lipman* decisions. (Cf. *Corning Hospital Dist.* v. *Superior Court* (1962) 57 Cal.2d 488, 495 [20 Cal.Rptr. 621, 370 P.2d 325].) The immunity for discretionary acts recognized in *Lipman* was carried forth in the new act as follows: As to public entities, they were granted immunity in tort cases unless otherwise provided. (§ 815.) Although there was no express statutory immunity for discretionary conduct, section 815.6 predicated liability upon breach of a mandatory duty imposed by statute—thus impliedly eliminating liability for discretionary conduct. Public employee liability was approached differently. Breach of mandatory duty is not the basis of public employee liability. Public employees are made liable to the same extent as private persons. (§ 820.) Employee discretionary conduct not being exempt on the basis of the liability statute, there is an express immunity for discretionary conduct. (§ 820.2.) The effect of the four statutes combined is to codify the *Lipman* immunity for discretionary conduct.[5]

---

[4]In *Lipman,* a school superintendent sought damages for defamatory statements made to obtain her removal against the school district, three trustees, the county superintendent of schools, and the district attorney. It was held that the district was immune because statements made within scope of authority came within discretionary conduct immunity and the district was not liable for acts outside the scope of authority. As to the individual defendants, it was held that discretionary immunity precluded recovery for acts within the scope of authority, while a cause of action could be stated for defamatory statements to the public which were not merely reports of official action but purported to be statements of fact within the official's knowledge.

[5]The *Lipman* opinion suggested that there might be cases of discretionary conduct where the employee would be immune but the public entity liable. (55 Cal.2d at

In addition to the implied immunity for discretionary conduct of public entities and the express immunity of public employees, the Legislature adopted a number of others. Thus immunity exists for adoption or failure to adopt or to enforce an enactment (§ 818.2 public entities, § 821 employees), for issuance, denial, or revocation of permits and licenses (§ 818.4 entities, § 821.2 employees), failure to inspect or negligent inspection (§ 818.6 entities, § 821.4 employees), and misrepresentations (§ 818.8 entities, § 822.2 employees). These additional immunity provisions are not merely redundant, applying only where discretionary conduct is involved, conduct which would in any event be immune first under the *Lipman* rule and second by negative implication under section 815.6 for entities, and by express provision under section 820.2 for employees. Rather, the additional immunity provisions apply whether or not the described activity should be classified in a particular case as discretionary or ministerial. While not adopting the entire governmental function immunity rejected in *Muskopf*, the Legislature chose to enact part of it because, as pointed out earlier, the alternatives would be either huge risk exposure or repeal of valuable health and safety regulations. We should not interfere with the legislative plan.

The language of section 818.4, the Law Revision Commission comments, its report, the legislative committee comment, and the history of the Tort Claims Act all lead to the conclusion that immunity from liability for erroneous issuance of a building permit applies whether the error is due to ministerial or discretionary mistake. Nevertheless, the cases are in conflict.

In *State of California v. Superior Court (Veta)* (1974) 12 Cal.3d 237, 245-246 [115 Cal.Rptr. 497, 524 P.2d 1281], the plaintiff sought mandamus and damages alleging that denial of his application for a land development permit was erroneous because he was denied a fair hearing. The court held that the gravamen of the action was the denial of the permit and that damages were not recoverable in the face of sections 818.4 and 821.2 immunities for refusal to issue a permit. There was no discussion whether the fair hearing requirement presented the agency with a basic policy decision or imposed a mandatory duty. The absence of any discussion of the discretionary-ministerial issue indicates it was irrelevant and that the sections apply to both discretionary and ministerial conduct.

pp. 229-230.) This suggestion was rejected by the Legislature "unless otherwise provided by statute." (§ 815.2; see legislative committee comment to § 815.2.)

The court in *O'Hagan* v. *Board of Zoning Adjustment, supra,* 38 Cal.App.3d 722, 725, 731, held that the immunity for licensing activities in sections 818.4 and 821.2 prevails over the mandatory duty liability of section 815.6 and that the immunity statutes as a matter of law barred any possible damages resulting from revocation of a use permit.[6] The immunity provisions are the same for revoking a license as for granting a permit.

Holding that the inspection immunity of section 818.6 applies to ministerial as well as discretionary acts, the court in *Clayton* v. *Rossman* (1976) 62 Cal.App.3d 666, 670-671 [133 Cal.Rptr. 306], reasons that section 818.4 (the permit immunity) as well as section 818.6 extend to ministerial acts, that unless the sections were held to apply to ministerial acts as well as discretionary acts, they would be "superfluous," and that the legislative committee comment to the sections so recognize.

One case has held (*Elson* v. *Public Utilities Commission* (1975) 51 Cal.App.3d 577, 587 [124 Cal.Rptr. 305]) and two have stated (*Burns* v. *City Council* (1973) 31 Cal.App.3d 999, 1004 [107 Cal.Rptr. 787]; *Shakespeare* v. *City of Pasadena* (1964) 230 Cal.App.2d 375, 386 [40 Cal.Rptr. 863]) that sections 818.4 and 821.2 apply only to discretionary and not to mandatory acts. Those cases focus on the final clause in the two sections stating that immunity applies to permits and licenses "where the public entity or an employee of the public entity is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked."

Professor Van Alstyne raises the issue without squarely disposing of it. Discussing permit immunity, he first quotes the Law Revision Commission rationale for the immunity (quoted earlier in this opinion) stating that if there is no immunity the liability would be immense. He continues by stating that "[to] the extent" decisions on licenses are discretionary, there is an overlap with the discretionary immunity; that this is a continuation of the " 'governmental' " function immunity of public entities; and that as to employee immunity, section 821.2 may overrule two prior decisions where recovery had been permitted for breach of mandatory duty to issue a license. Professor Van Alstyne then

---

[6]The court reasoned in part that the Legislature by adopting sections 818.4 and 821.2 had determined that licensing activities are discretionary. Although such reasoning differs from that employed in the earlier portion of this opinion, the result as to legislative intent and the effect of statute is the same—the intent to grant immunity for all licensing and permit activities, whether or not they might be categorized as ministerial for other purposes.

states "[i]t might be argued" that if issuance of a license had become a mandatory duty the official no longer could be regarded as " 'authorized . . . to determine' " whether the license should issue within the meaning of the last clause of sections 818.4 and 821.2. (Van Alstyne, Cal. Government Tort Liability, *supra*, §§ 5.58-5.59, pp. 165-167.)

The last clause of the two sections should be interpreted literally. The immunity applies whenever the public entity or official is *authorized* by enactment to determine whether the permit should issue. It is undisputed in the instant case, for example, that the county was authorized by enactment to determine whether the permit should issue and the basis of the action is negligence in having issued the permit. The last clause limits immunity only where it is shown that there was no enactment authorizing action by the entity or the official—where there was usurpation of power. One and possibly both of the cases cited by Professor Van Alstyne in this connection seem to be such cases.[7]

The conflict in the cases should be resolved in favor of the legislative committee comment and the policy articulated by the commission. We should disapprove *Elson, Burns,* and *Shakespeare,* insofar as they state or hold that erroneously granting or denying a permit is actionable where the error is due to a ministerial mistake.

### Applicability of the Tort Claims Act of 1963

Section 814.2 provides: "Nothing in this part shall be construed to impliedly repeal any provision of Division 4 (commencing with Section 3201) or Division 4.5 (commencing with Section 6100) of the Labor Code."

The legislative committee comment provides: "This section makes clear that the statute relating to the liability of public entities and public

---

[7]In *Armstrong* v. *City of Belmont* (1958) 158 Cal.App.2d 641 [322 P.2d 999], the electrical inspector approved the wiring but defendant members of the city council and city administrator refused to permit electrical service. The court affirmed judgment in favor of the city, a governmental function being involved, but the judgment in favor of the individual defendants was reversed. So far as appears there was no statute, charter provision, or ordinance authorizing the individual defendants rather than the inspector to refuse electrical connection permits.

The second case cited by Professor Van Alstyne might also be viewed as an usurpation of power case. In *Ellis* v. *City Council, supra,* 222 Cal.App.2d 490, defendant building inspector, although concluding that plaintiff had met all requirements for a swimming pool permit, refused to issue it until plaintiff remedied certain defects in a nearby structure which was not the subject of the permit application.

employees has no effect on rights under the Workmen's Compensation Act."

Labor Code section 3800, stating local governments shall require workers' compensation provision before granting a building permit, is included in division 4 of the Labor Code.

The language of section 814.2 shows that the Tort Claims Act of 1963 was not intended to have any applicability to the rights granted or duties imposed by the Workers' Compensation Act, and the legislative committee comment shows that rights under that act must take precedence to the provisions of the Tort Claims Act. The instant action is predicated on the county's asserted breach of a duty imposed by the Workers' Compensation Act and the enforcement by the worker of his correlative right. It is apparent that the purpose of section 814.2 is that the provisions of the Tort Claims Act shall not interfere with recovery of benefits under the workers' act. Plaintiff's action, seeking recovery of compensation benefits lost due to the county's asserted failure to enforce Labor Code section 3800, comes within that purpose. Accordingly, the Tort Claims Act is not applicable.

General provisions of law thus govern. *Muskopf* v. *Corning Hospital Dist., supra,* 55 Cal.2d 211, repudiated sovereign immunity for ministerial acts, and the instant action may be maintained for asserted breach of a statutory duty without justification or excuse, plaintiff being a member of the class to be protected. (*Alarid* v. *Vanier, supra,* 50 Cal.2d 617, 621-624; *Lehmann* v. *Los Angeles City Bd. of Educ., supra,* 154 Cal.App.2d 256, 259-261.)

I agree that the judgment should be reversed.

On March 3, 1977, the opinion was modified to read as printed above.